# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 7, 2006         Decided March 16, 2007

No. 05-1305

CINTAS CORPORATION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITE HERE,
INTERVENOR FOR RESPONDENT

---

Consolidated with
05-1340

---

On Petitions for Review and Cross-Application for
Enforcement of an Order of the
National Labor Relations Board

---

*Joel H. Kaplan* argued the cause for petitioner. With
him on the briefs was *Brian M. Stolzenbach*.

*Amy H. Ginn*, Attorney, National Labor Relations Board,
argued the cause for respondent. With her on the brief were
*Ronald Meisburg*, General Counsel, *John H. Ferguson*,

Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Meredith L. Jason*, Attorney.

*Brent Garren* argued the cause for intervenor UNITE HERE in support of respondent. With him on the brief was *Ira J. Katz*.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Concurring opinion filed by *Circuit Judge* HENDERSON.

GRIFFITH, *Circuit Judge*: This case involves an allegation that the confidentiality rule of petitioner Cintas Corporation ("Cintas" or "the Company") violated provisions of the National Labor Relations Act ("NLRA" or "the Act") that protect employees' right to discuss the terms and conditions of their employment with others. The National Labor Relations Board ("NLRB" or "the Board") concluded that the Company's rule violated the Act because, although it does not expressly forbid protected employee discussions, an employee would reasonably construe it to do so. We affirm the Board's decision.

## I.

Cintas supplies workplace uniforms to businesses throughout North America and employs approximately 27,000 people at 350 facilities. Company policies governing employee conduct are set forth in a handbook titled the "Cintas Corporation Partner Reference Guide," which is distributed to all employees. (Cintas refers to its employees as "partners.") A section of the handbook titled "Cintas Culture," in which the Company describes its "principles and values," includes a

discussion of how employees are expected to treat confidential information:

> *We honor confidentiality*. We recognize and protect the confidentiality of any information concerning the company, its business plans, its partners, new business efforts, customers, accounting and financial matters.

*Cintas Corp.*, 344 N.L.R.B. No. 118, at *4 (June 30, 2005) (emphasis in original). In another section, titled "Discipline Policy," employees are warned that they may be sanctioned for "violating a confidence or [for the] unauthorized release of confidential information." *Id.*

The Union of Needletrades, Industrial and Textile Employees (UNITE HERE, formerly UNITE) ("the Union") filed unfair labor practice charges with the NLRB, alleging that the Company was in violation of section 8(a)(1) of the NLRA (29 U.S.C. § 158(a)(1)), which proscribes, among other things, employer interference with employees' right to discuss the terms and conditions of their employment with others, *see Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 491 (1978) ("[T]he right of employees to self-organize and bargain collectively established by § 7 of the NLRA, 29 U.S.C. § 157, necessarily encompasses the right effectively to communicate with one another regarding self-organization at the jobsite."); *Stanford Hosp. & Clinics v. NLRB*, 325 F.3d 334, 343 (D.C. Cir. 2003) (finding no substantive distinction between solicitation of fellow employees and solicitation of nonemployees). The Board's General Counsel agreed with the Union and issued a complaint against Cintas, alleging that the language in its employee handbook prohibiting the disclosure of "any information concerning . . . partners" unlawfully restricted employees from exercising their section 7 rights. *Cintas Corp.*,

344 N.L.R.B. No. 118, at *4. In its defense, Cintas argued before an administrative law judge ("ALJ") that the General Counsel had read the disputed handbook language too broadly, and that there was no evidence that the handbook language had a chilling effect on employees' rights. *Id.* The Company offered testimony that pictures and names of employees had appeared, along with their wage rates and other terms and conditions of employment, on Union flyers—a contravention of the General Counsel's allegedly broad reading of the handbook—and yet the Company had taken no disciplinary action. *Id.* The ALJ held that the "mere existence" of a rule whose plain language interferes with employees' section 7 right to discuss their wages and other terms and conditions of employment violates the Act quite apart from whether the Company enforced the rule in practice. What mattered here, according to the ALJ, was that employees "could reasonably construe the confidentiality provision in [the employee handbook] as restricting [this] right . . . ." *Id.* The ALJ also noted Cintas's failure to present a legitimate business purpose to which the disputed handbook prohibitions had been narrowly tailored, and which might have thus allowed the Company to narrowly restrict employees' section 7 rights. *Id; see Adtranz ADB Daimler-Benz Transp. v. NLRB*, 253 F.3d 19, 29 (D.C. Cir. 2001) (noting that NLRB may not "cavalierly" declare policies facially invalid without any supporting evidence, particularly where there are legitimate business purposes for the rule).

On review, the NLRB unanimously affirmed the ALJ's decision, concluding that the language in the Cintas employee handbook created an "unqualified prohibition of the release of 'any information' regarding 'its partners[,]' [which] could reasonably [sic] construed by employees to restrict discussion of wages and other terms and conditions of employment with their fellow employees and with the Union." *Cintas Corp.*, 344 N.L.R.B. No. 118, at *1. The Board's order required that Cintas

either rescind the disputed language and provide employees with handbook inserts substituting lawful language, or distribute a revised employee handbook with the appropriate substitution of lawful language for unlawful language. *Id.* at *2. The Board also required the Company to post a remedial notice. *Id.* Cintas petitions for review of the Board's order and the Union intervenes in opposition. The Board seeks enforcement of its order.

## II.

Section 7 of the NLRA guarantees employees the right to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Section 8 prohibits employers from "interfer[ing] with, restrain[ing], or coerce[ing] employees in the exercise of [that] right[]." 29 U.S.C. § 158(a)(1). It "necessarily encompasses [employees'] right effectively to communicate with one another regarding self-organization at the jobsite," *Beth Israel Hosp.*, 437 U.S. at 491, and we have previously enforced its protection of an employee's right to discuss the terms and conditions of her employment with other employees, *see Brockton Hosp. v. NLRB*, 294 F.3d 100, 103 (D.C. Cir. 2002), and with nonemployees, *see Stanford Hosp. & Clinics*, 325 F.3d at 343. The Board here held that the confidentiality language in the Company's employee handbook violated section 8(a)(1) because a Cintas employee could, in the Board's view, reasonably interpret the handbook's confidentiality language to restrict her section 7 right to discuss wages and other terms and conditions of employment with other employees or with the Union.

Cintas's challenge to the Board's conclusion is two-fold. First, the Company mounts a threshold defense based on undisputed facts, and then offers an interpretive argument that the Board simply misread the disputed confidentiality rule. We take up the threshold factual defense first. It relies upon the following assertions: (1) the confidentiality language in the employee handbook does not explicitly prohibit employee activity protected by section 7; (2) there is no evidence that employees have interpreted the language to prohibit section 7 activity; and (3) Cintas has never interpreted nor applied the language to prohibit section 7 activity. In response to each of these assertions, the Board demurs as to the facts and argues in turn: (1) a rule that does not explicitly interfere with protected employee activity may nevertheless violate section 8(a)(1); (2) evidence of actual employee conduct cannot vindicate an unlawful rule; and (3) an employer's failure (intentional or not) to enforce a facially unlawful rule does not redeem the rule. We agree. None of the Company's factual arguments undermines the force of the Board's legal reasoning.

Addressing each of the Company's assertions, first, we agree that its confidentiality language does not explicitly prohibit section 7 activity. Nowhere in the employee handbook is there language that, by its terms, expressly instructs employees not to discuss their wages and other terms and conditions of employment with each other. But this fact is not dispositive. As we have recently held in *Guardsmark v. NLRB*, No. 05-1216, slip op. at 6-7 (D.C. Cir. Feb. 2, 2007), the Board's proper inquiry is described in *Martin Luther Memorial Home*, 343 N.L.R.B. No. 75 (May 19, 2004), where the Board determined that, in the absence of express language prohibiting section 7 activity, a company nonetheless violates section 8(a)(1) if "employees would reasonably construe the language to prohibit Section 7 activity . . . ," *id.* at *2. The Company's initial threshold objection fails.

Second, that nothing in the record demonstrates any employees' actual interpretation of the confidentiality rule to prohibit their lawful discussion may be instructive, but it, too, is not dispositive. No such evidence is required to support the Board's conclusion that the rule is overly broad and thus unlawful. The Board is merely required to determine whether "employees *would reasonably* construe the [disputed] language to prohibit Section 7 activity," *see Guardsmark*, slip op. at 6 (quoting *Martin Luther*, 343 N.L.R.B. No. 75, at *2) (emphasis added), and not whether employees *have* thus construed the rule.[1] In making its determination, "the Board focuses on the

---

[1] Although the standard announced by the NLRB is whether "employees *would* reasonably construe the [confidentiality provision] to prohibit Section 7 activity," *Cintas Corp.*, 344 N.L.R.B. No. 118, at *1 (quoting *Martin Luther*, 343 N.L.R.B. No. 75, at *1 (emphasis added)), we note that both the ALJ and the NLRB found that employees "could" reasonably construe the confidentiality provision in the Cintas employee handbook to restrict their section 7 rights, *id.* at *1, *6. We find slippage between "would" and "could" inconsequential here given the Board's use of the modifier "reasonably." As the Board has explained:

> [W]e will not conclude that a reasonable employee would read the rule to apply to [section 7] activity simply because the rule *could* be interpreted that way. To take a different analytical approach would require the Board to find a violation whenever the rule could conceivably be read to cover Section 7 activity, even though the reading is unreasonable. We decline to take that approach.

*Martin Luther*, 343 N.L.R.B. No. 75, at *3; *see also Guardsmark*, 344 N.L.R.B. No. 97, at *3 (finding no violation where an employee "could possibly" interpret the rule to prohibit protected activity). Although in some settings a critical difference might exist between "could" and "would," there is no such difference here between the phrases "could *reasonably*" and "would *reasonably*." Both preclude possible, but unreasonable, interpretations of company rules, and therefore merit our deference.

text of the challenged rule." *Id.* As long as its textual analysis is "reasonably defensible," and "adequately explain[ed]," *id.* (citations omitted), the Board need not rely on evidence of employee interpretation consistent with its own to determine that a company rule violates section 8 of the Act. *See Waco, Inc.*, 273 N.L.R.B. No. 101, at *3 (Dec. 14, 1984) (holding rule unlawful even where "no employee testified that [it] inhibited him from engaging in [section 7] activity").

Third, Cintas argues that it has never applied the confidentiality rule in the manner feared by the Union. But as we have recently clarified, the "'mere maintenance' of a rule likely to chill section 7 activity, whether explicitly or through reasonable interpretation, can amount to an unfair labor practice 'even absent evidence of enforcement.'" *Guardsmark*, slip op. at 6 (quoting *Lafayette Park Hotel*, 326 N.L.R.B. 824, 825 (1998), *enforced mem.*, No. 98-1625, 1999 WL 1215578, at *1 (D.C. Cir. Nov. 26, 1999)). If the Board concludes that employees would reasonably construe the Company's confidentiality language to restrict discussion of their wages and other terms and conditions of employment with each other, the Board is under no obligation to consider whether the disputed restriction has ever been enforced against employees exercising their section 7 rights. *See id.*; *see also Franklin Iron & Metal Corp.*, 315 N.L.R.B. 819, 820 (1994) ("Nor does it matter if the rule [claimed to unlawfully limit employees' section 7 rights] was unenforced or unheeded."), *enforced*, 83 F.3d 156 (6th Cir. 1996); *Radisson Plaza Minneapolis*, 307 N.L.R.B. 94, 94 (1992) ("the finding of a violation is not premised on . . . evidence of enforcement"), *enforced*, 987 F.2d 1376 (8th Cir. 1993).

Finding no merit in Cintas's factual defense, we turn to the gravamen of its appeal: the Board's interpretation of the confidentiality rule itself. We do so with deference to the

Board's decision, *see Brockton Hosp.*, 294 F.3d at 103, and the "reasonable inferences" it draws from the evidence, *U.S. Testing Co. v. NLRB*, 160 F.3d 14, 19 (D.C. Cir. 1998) (internal citations omitted). We will "abide [the Board's] interpretation of the Act if it is reasonable and consistent with controlling precedent." *Brockton Hosp.*, 294 F.3d at 103 (citation omitted). An employer's confidentiality rule violates the NLRA if it "would reasonably tend to chill employees in the exercise of their Section 7 rights." *Lafayette Park Hotel*, 326 N.L.R.B. at 825. In considering this question, the Board must inquire, among other things, whether "employees would reasonably construe the [confidentiality rule] to prohibit Section 7 activity . . . ." *Guardsmark*, slip op. at 6 (quoting *Martin Luther*, 343 N.L.R.B. No. 75, at \*2). The ALJ thus correctly noted that

> [t]he ultimate question is whether employees reading [the disputed rule] would reasonably construe [it] as precluding them from discussing their terms and conditions of employment with other employees or a union, or would they reasonably understand that the [disputed rule] was designed to protect their employer's legitimate proprietary business interests.

*Cintas Corp.*, 344 N.L.R.B. No. 118, at \*4.

The Board described Cintas's rule as an "unqualified prohibition of the release of 'any information' regarding 'its partners[,]' [which] could be reasonably construed by employees to restrict discussion of wages and other terms and conditions of employment." *Id.* at \*1. "[G]iven the breadth of the all-encompassing phrase 'any information concerning . . . its partners[,]' it is difficult to interpret the rule otherwise."

Respondent's Brief at 10.[2] Cintas disagrees, suggesting that the Board's interpretation is the product of a creative imagination that chooses absurdity over reason. Petitioner's Brief at 6-7. The Company concedes that the quoted phrase is all-encompassing, but argues that a literal interpretation of the phrase would be unreasonable, as it would preclude employees from discussing, for instance, their favorite television programs. *Id.* at 13. We are not persuaded. The NLRA does not protect an employee's right to discuss his favorite television show, and there is no reason to imagine that an employee would reasonably construe the Company's confidentiality rule to curb such behavior. The NLRA does, however, protect an employee's right to discuss the terms and conditions of his employment. And because the Company has made no effort in its rule to distinguish section 7 protected behavior from violations of company policy, we find that the Board's determination is "reasonably defensible," and therefore entitled to our considerable deference. *Adtranz*, 253 F.3d at 25 (quoting *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497 (1979)). The Board does not rely on a literal interpretation of the disputed language, nor do we believe that the parade of horribles proposed by the Company would result from the exercise of sound judgment. A failure to exclude one particular activity (e.g., discussion of working conditions) does not in this case imply intent to include another (e.g., discussions of non work-related personal information).

Cintas argues that the Board's decision is "wholly inconsistent" with Board precedent, and that the facts of this case are "impossible to distinguish" from cases in which non-disclosure rules have been approved. Petitioner's Brief at 19.

---

[2] Although the Board does not find the disputed rule to be ambiguous, it notes (for good measure) that under Board case law "any ambiguity in a rule must be construed against the promulgator of the rule." Respondent's Brief at 9 (citing *Lafayette Park Hotel*, 326 N.L.R.B. at 828).

Contending that literal interpretations have been eschewed by the Board, Cintas again argues that such interpretations invite absurdity—rendering employees who construe the phrase "any information" literally as tight-lipped as, in the Company's own comparison, Carthusian monks.[3] *Id.* at 13. It would have us believe that company rules prohibiting disclosure of "any information concerning . . . employees," are clearly—and have always been—lawful under the Board's jurisprudence, and therefore do not merit intervention. We disagree and rely on our previous holding in *Brockton Hospital*, which enforced the Board's order invalidating a company policy prohibiting the sharing of "information concerning patients, associates [i.e., employees], or hospital operations." 294 F.3d at 106. In *Brockton Hospital*, we determined that "the policy on its face prohibits [employees] from discussing with each other, let alone Union officials, 'information concerning [themselves],' which the Board argues the [employees] could reasonably read to include their wages, hours, and working conditions—the very stuff of collective bargaining." *Id.* at 107. Cintas attempts to distinguish *Brockton Hospital* on the ground that the unlawful Brockton policy prohibited the discussion of information about employees "inside or outside" the workplace. Petitioner's Brief at 17 (quoting *Brockton Hosp.*, 294 F.3d at 106). The lack of such a phrase in Cintas's policy fails to make the disputed language any less expansive. The unlawful language in *Brockton Hospital*, which restricted sharing "information concerning . . . [employees]" was, if anything, less restrictive than the disputed language in *Cintas*, where sharing "*any* information concerning . . . [employees]" is prohibited.

---

[3] "If [the Board's] literal reading of the [confidentiality] principle were accurate, Cintas employees could hardly hold an ordinary conversation. They would be . . . as talkative as the Carthusian monks." Petitioner's Brief at 13.

The Cintas rule is distinguishable from company rules that the Board has previously approved, which it found to be sufficiently limited by specific context or language so as to be clear to employees that the rules did not restrict employees' section 7 rights. *See, e.g.*, *Aroostook County Reg'l Ophthalmology Ctr. v. NLRB*, 81 F.3d 209, 212-13 (D.C. Cir. 1996) (rule banning discussion of "office business" in which the phrase appeared at the end of a discussion of patient confidentiality); *Fiesta Hotel Corp.*, 344 N.L.R.B. No. 159 (Aug. 15, 2005) (rule banning discussion of "policies and procedures" that did not include "information concerning 'employees,'" and followed a list of "customer or marketing lists or strategies, financial information, computer files or programs, recipes, and personnel files"); *Mediaone of Greater Florida*, 340 N.L.R.B. No. 39, at *4 (Sep. 19, 2003) (reference to "employee information" appearing within larger provision that prohibited disclosure of 'proprietary information, including information assets and intellectual property' and listed the phrase as an example of 'intellectual property'"); *K-mart*, 330 N.L.R.B. No. 29, at *1 (Nov. 30, 1999) (prohibition on disclosing "company business and documents" did not by its terms include employee wages or working conditions and made no reference to employee information); *Lafayette Park Hotel*, 326 N.L.R.B. at 826 (rule banning discussion of "hotel-private" information that did not on its face cover employee wage discussion). We therefore conclude that the Board's determination was reasonable and consistent with controlling precedent.

A more narrowly tailored rule that does not interfere with protected employee activity would be sufficient to accomplish the Company's presumed interest in protecting confidential information. *See, e.g.*, *Cmty. Hosp. of Cent. Cal. v. NLRB*, 335 F.3d 1079, 1088-89 (D.C. Cir. 2003) (holding that a rule prohibiting disclosure of "confidential" information

concerning employees would not imply prohibition against disclosure of working conditions because such information is not encompassed by plain meaning of "confidential information," i.e., "information that has been communicated in confidence").

## III.

For the foregoing reasons, we deny Cintas's petition for review and grant the Board's cross-petition for enforcement of its order in full.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring.

Because I believe our decision in *Brockton Hospital v. NLRB*, 294 F.3d 100 (D.C. Cir. 2002), controls this case, I would proceed no further. In *Brockton Hospital*, the hospital employer maintained a confidentiality policy providing that "[i]nformation concerning patients, [nurses], or hospital operations should not be discussed . . . , except strictly in connection with hospital business." *Id*. at 106 (internal quotation omitted). Although both this court and the Board have upheld confidentiality rules where the context of the rule illustrates mere protection of legitimate business interests, such as business or proprietary information, *see*, *e.g.*, *Aroostook County Reg'l Ophthalmology Ctr*. *v*. *NLRB*, 81 F.3d 209, 212–13 (D.C. Cir. 1996) (permitting restriction on discussion of "office business" because part of rule protecting patient information); *Mediaone of Greater Fla*., *Inc*., 340 N.L.R.B. 277, 278–79 (2003) (restriction on "employee information" described as "proprietary information" and "intellectual property"), in *Brockton Hospital* we agreed with the Board that the hospital's confidentiality policy was facially overbroad despite its contextual references to "hospital business," *see Brockton Hosp*., 294 F.3d at 106–07. Specifically, we held that "the Board reasonably applied the standard set forth in *Lafayette Park*" to invalidate the hospital rule broadly prohibiting nurses from discussing "information concerning [themselves]," which "could [be] reasonably read to include their wages, hours, and working conditions." *Id*. (quotation omitted) (second alteration added).

On its face, Cintas's confidentiality rule is even broader than the rule at issue in *Brockton Hospital*. By making confidential "any information concerning the company," the rule's breadth could include publicly available information—even the company's address. *Cintas Corp*., 344 N.L.R.B. No. 118, 2005 WL 1564863, at 1 (June 30, 2005). Such a literal reading of the

rule would produce an unintended—and absurd—result and cannot support the Board's decision that the rule is overbroad. As with the *Brockton Hospital* rule, however, the context of Cintas's confidentiality provision narrows its scope, defining as confidential "any information concerning . . . [employees]" in the same sentence that "business plans," "new business efforts" and "accounting and financial matters" are classified confidential. *Id.* Under the doctrine of *noscitur a sociis*, the provision's restriction on disclosing employee information must be read in light of its associated references to legitimately protected business information. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 175 (D.C. Cir. 2006) ("[*N*]*oscitur a sociis* teaches that a word is known by the company it keeps."). Thus, both rules share broad facial restrictions on information disclosure—although Cintas's restriction is broader—qualified by *some* reference to business interests. Accordingly, our *Brockton Hospital* decision—concluding that the Board acted reasonably in finding that confidentiality rule invalid—controls here and compels the conclusion that the Board acted reasonably in finding that the Cintas provision "could be reasonably construed by employees to restrict discussion of wages and other terms and conditions of employment." *Cintas Corp.*, *supra*, at 1 (applying *Martin Luther Mem. Home*, *Inc.*, 343 N.L.R.B. 646 (2004)).