# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 24, 2014

Lyle W. Cayce
Clerk

No. 12-60752

FLEX FRAC LOGISTICS, L.L.C.; SILVER EAGLE LOGISTICS, L.L.C.,

Petitioners/Cross-Respondents,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent/Cross-Petitioner.

Petition for Review and Cross Petition for Enforcement
of an Order of the National Labor Relations Board

Before STEWART, Chief Judge, and HIGGINBOTHAM and JONES, Circuit Judges.

CARL E. STEWART, Chief Judge:

Flex Frac Logistics, L.L.C. and Silver Eagle Logistics, L.L.C. (collectively, "Flex Frac")[1] petition for review of an order by the National Labor Relations Board ("NLRB") holding that Flex Frac's employee confidentiality policy is an unfair labor practice in violation of Section 8(a)(1) of the National Labor Relations Act ("NLRA"). The NLRB cross-petitions for enforcement of the order. We DENY Flex Frac's petition for review and ENFORCE the NLRB's order.

---

[1] For purposes of this appeal, we treat Flex Frac Logistics, L.L.C. and Silver Eagle Logistics, L.L.C. as joint employers.

No. 12-60752

# I. FACTUAL AND PROCEDURAL HISTORY

## A. Facts

Flex Frac is a non-union trucking company based in Fort Worth, Texas. Flex Frac relies on its employees as well as independent contractors to deliver frac sand to oil and gas well sites. The rates Flex Frac charges its customers are confidential.

Each Flex Frac employee is required to sign a document which includes a confidentiality clause. The clause reads as follows:

> **<u>Confidential Information</u>**
> Employees deal with and have access to information that must stay within the Organization. Confidential Information includes, but is not limited to, information that is related to: our customers, suppliers, distributors; Silver Eagle Logistics LLC organization management and marketing processes, plans and ideas, processes and plans, our financial information, including costs, prices; current and future business plans, our computer and software systems and processes; personnel information and documents, and our logos, and art work. No employee is permitted to share this Confidential Information outside the organization, or to remove or make copies of any Silver Eagle Logistics LLC records, reports or documents in any form, without prior management approval. Disclosure of Confidential Information could lead to termination, as well as other possible legal action.

## B. Procedural History

In 2010, Flex Frac fired Kathy Lopez and she filed a charge with the NLRB. The Acting General Counsel for the Board subsequently issued a complaint, alleging, *inter alia*, that Flex Frac promulgated and maintained a rule prohibiting employees from discussing employee wages.[2]

---

[2] The complaint also alleged that Flex Frac unlawfully interfered with or restrained Lopez's Section 7 rights when it terminated her; however, the NLRB severed and remanded that portion of the complaint. Thus, Lopez's termination is not currently before us on appeal.

No. 12-60752

The administrative law judge ("ALJ") found that although there was no reference to wages or other specific terms and conditions of employment in the confidentiality clause, the clause nonetheless violated Section 8(a)(1) of the NLRA because it was overly broad and contained language employees could reasonably interpret as restricting the exercise of their Section 7 rights. In a split decision, the NLRB affirmed the ALJ's ruling that Flex Frac's confidentiality clause violated Section 8(a) of the NLRA.[3] *Flex Frac Logistics LLC & Silver Eagle Logistics LLC, Joint Employers & Kathy Lopez*, 358 N.L.R.B. No. 127 (2012). Thereafter, Flex Frac filed its petition for review, and the NLRB filed a cross-petition for enforcement.

## II. STANDARD OF REVIEW

We review the NLRB's legal conclusions de novo and its "factual findings under a substantial evidence standard." *Sara Lee Bakery Grp., Inc. v. NLRB*, 514 F.3d 422, 428 (5th Cir. 2008). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla[] and less than a preponderance." *El Paso Elec. Co. v. NLRB*, 681 F.3d 651, 656 (5th Cir. 2012) (emphasis, internal quotation marks, and citations omitted). In making this determination, "[w]e may not reweigh the evidence, try the case de novo, or substitute our judgment for that of the [NLRB], even if the evidence preponderates against the [NLRB's] decision." *Id.* at 656–57 (internal quotation marks and citation omitted). "Only in the most rare and unusual cases will an appellate court conclude that a finding of fact made by the [NLRB] is not supported by substantial evidence." *Merchs. Truck Line, Inc. v. NLRB*, 577 F.2d 1011, 1014 n.3 (5th Cir. 1978) (internal quotation marks and citation omitted).

---

[3] The NLRB delegated its authority to a three-member panel for this proceeding.

## III. DISCUSSION

As an initial matter, we address a belated constitutional challenge raised by Flex Frac regarding the NLRB's authority to render the decision currently before us.  In its reply brief, Flex Frac argued that the NLRB's decision was invalid because the President's appointment of two members of the panel was unconstitutional.  According to Flex Frac, the President lacked the authority to make putative recess appointments when the U.S. Senate was not in recess and the vacancies did not occur during an intersession recess.  Because two members of the three-member panel were not validly appointed, Flex Frac contended that the NLRB did not have the quorum necessary to issue its decision.

We decline to address the merits of Flex Frac's constitutional argument and instead hold that Flex Frac waived its constitutional challenge by failing to raise it in its initial brief.  *See In re Rodriguez*, 695 F.3d 360, 365 n.4 (5th Cir. 2012) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal." (internal quotation marks and citation omitted)).  Ordinarily, arguments raised for the first time in a reply brief are waived. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005).  Moreover, appellate courts shall not consider objections that have not been raised before the NLRB "unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e).  Flex Frac argues that we should nevertheless consider its belated constitutional challenge because it implicates our jurisdiction.  However, another panel of this Court faced a similar issue and concluded that the constitutionality of the President's authority to make recess appointments was not a jurisdictional issue it must consider, especially considering that the challenge was not raised during the parties' initial briefing.  *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 351 (5th Cir.

2013). We agree. Accordingly, we proceed to address Flex Frac's remaining arguments.

Flex Frac argues that the NLRB's order should be set aside because it was unreasonable, not supported by substantial evidence, and inconsistent with precedent. Under Section 8(a)(1) of the NLRA, it is "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158. These rights include self-organization; forming, joining, and assisting labor organizations; collective bargaining; and engaging "in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

A "workplace rule that forb[ids] the discussion of confidential wage information between employees . . . patently violate[s] section 8(a)(1)." *NLRB v. Brookshire Grocery Co.*, 919 F.2d 359, 363 (5th Cir. 1990). When determining whether a workplace rule violates Section 8(a)(1), we must first decide "whether the rule *explicitly* restricts activities protected by Section 7." *Lutheran Heritage Village-Livonia*, 343 N.L.R.B. 646, 646 (2004). If the restriction is not explicit, a workplace rule violates Section 8(a)(1) when it falls within one of the following categories: "(1) employees would reasonably construe the language to prohibit Section 7 activity; (2) the rule was promulgated in response to union activity; or (3) the rule has been applied to restrict the exercise of Section 7 rights." *Id.* at 647. In making this inquiry, we "must refrain from reading particular phrases in isolation." *Id.* at 646. Moreover, we may not presume that a workplace rule impermissibly interferes with employees' right to exercise their Section 7 rights. *Id.* The ALJ found, and the parties do not dispute, that the rule does not explicitly restrict Section 7 activities. The parties also agree that the second category is not at issue. We

therefore limit our discussion to whether employees would reasonably construe Flex Frac's confidentiality provision to prohibit Section 7 activity.

Flex Frac's contention that the NLRB's interpretation of the confidentiality clause was unreasonable is without merit. As the NLRB noted, the list of confidential information encompasses "financial information, including costs[, which] necessarily includes wages and thereby reinforces the likely inference that the rule proscribes wage discussion with outsiders." *Flex Frac Logistics*, 358 N.L.R.B. No. 127 at 3. The confidentiality clause gives no indication that some personnel information, such as wages, is not included within its scope. *See Cintas Corp. v. NLRB*, 482 F.3d 463, 469 (D.C. Cir. 2007) ("[T]he Company has made no effort in its rule to distinguish section 7 protected behavior from violations of company policy . . . .").

Flex Frac's argument that the NLRB's decision is not supported by substantial evidence fails. The confidentiality clause's express terms prevent discussion of personnel information outside the company, and Flex Frac presents no evidence that its non-management employees discussed their wages with non-employees. Rather, Flex Frac points to evidence that its employees discuss wages amongst themselves and its management and recruiters discuss wage information with current and prospective employees. Thus, Flex Frac's evidence does not support the point it wishes to prove: that employees were free to discuss terms and conditions of employment, including wages, outside the company.

Flex Frac also argues that its employees did not interpret the confidentiality provision to restrict their Section 7 rights; however, the actual practice of employees is not determinative. *See id.* at 467 ("The Board is merely required to determine whether employees *would reasonably* construe the [disputed] language to prohibit Section 7 activity and not whether employees *have* thus construed the rule." (internal quotation marks and citation

omitted)). Moreover, "the Board need not rely on evidence of employee interpretation consistent with its own to determine that a company rule violates section 8 of the Act." *Id.* Nor is the employer's enforcement of the rule determinative. *See Lafayette Park Hotel*, 326 N.L.R.B. 824, 825 (1998) ("[T]he appropriate inquiry is whether the rules would reasonably tend to chill employees in the exercise of their Section 7 rights. Where the rules are likely to have a chilling effect . . . , the Board may conclude that their maintenance is an unfair labor practice, even absent evidence of enforcement." (internal footnote omitted)).

We are also unpersuaded by Flex Frac's argument that the NLRB's decision conflicts with its decisions in *Lafayette Park Hotel*, *K-Mart*, 330 N.L.R.B. 263 (1999), and *In re Mediaone of Greater Fla., Inc.*, 340 N.L.R.B. 277 (2003). In *Lafayette Park Hotel*, the employer promulgated "standards of conduct" for its employees, including a statement that it was unacceptable to "[d]ivulg[e] Hotel-private information to employees or other individuals or entities that are not authorized to receive that information." 326 N.L.R.B. at 824. The rule failed to define "hotel-private information." *Id.* at 826. A split panel held that employees "reasonably would understand that the rule is designed to protect that interest rather than to prohibit the discussion of their wages." *Id.* at 826. Likewise, in *K-Mart*, the employer's policy stated, "Company business and documents are confidential. Disclosure of such information is prohibited." 330 N.L.R.B. at 263. The NLRB found this language to be similar to the language in *Lafayette Park Hotel* and, thus, dismissed the complaint. *Id.* at 263–64.

Contrary to Flex Frac's assertion, its confidentiality provision is not similar to the rules in *Lafayette Park Hotel* and *K-Mart*. There is a substantial difference between "Hotel-private information" and "company business and documents" on the one hand and "personnel information" on the other. By

specifically identifying "personnel information" as a prohibited category, Flex Frac has implicitly included wage information in its list, especially in light of its prohibition against disclosing costs.

Moreover, the NLRB's decision here does not conflict with its decision in *Mediaone.* In *Mediaone*, a divided panel of the NLRB agreed that an employer's prohibition against disclosure of "proprietary information . . . includ[ing] . . . customer and employee information, including organizational charts and databases [and] financial information" would not chill employees in the exercise of their Section 7 rights. 340 N.L.R.B. at 278–79. The NLRB noted that the prohibitions were listed as examples of "intellectual property," and thus employees who read the rule as a whole would not believe it extended to terms and conditions of employment. *Id.* at 279.

*Mediaone* is distinguishable from the confidentiality provision at issue here. In *Mediaone*, the information was listed as a sub-set of "intellectual property." Therefore, employees would not reasonably understand their wages to be a form of intellectual property. Flex Frac's confidentiality provision contains no limitation on the type of "personnel information" that is prohibited. Instead, it is a part of the larger category of "confidential information."

Flex Frac's remaining attempts to justify its confidentiality provision are equally unavailing. Flex Frac contends that its rule prohibits only disclosure of confidential personnel information, not all personnel information; however, it fails to point to any language making this distinction. Moreover, Flex Frac defines confidential information as including personnel information. Therefore, contrary to Flex Frac's contentions otherwise, we hold that the NLRB's order does not contravene its precedent.[4]

---

[4] By its terms, the NLRB's enforcement order acknowledges that the employer is only prohibited from "[p]romulgating and maintaining an overly broad and ambiguous confidentiality rule that . . . may reasonably be read to prohibit employees from discussing

No. 12-60752

## IV. CONCLUSION

Accordingly, based on the foregoing reasons, we DENY Flex Frac's petition for review and ENFORCE the NLRB's order.

---

wages or other terms and conditions of employment." The order does not impair the majority of the company's confidentiality policy. Further, the order does not prevent Flex Frac from redrafting its policy to maintain confidentiality for employee-specific information like social security numbers, medical records, background criminal checks, drug tests, and other similar information.