# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 8, 2016                    Decided July 29, 2016

No. 14-1231

QUICKEN LOANS, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with No. 14-1265

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*William M. Jay* argued the cause for petitioner. On the briefs were *William D. Sargent*, *Robert J. Muchnick*, *Christopher R. Kazanowski*, and *S. Libby Henninger*.

*Gregoire F. Sauter*, Attorney, National Labor Relations Board, argued the cause for respondent. On the brief were *Richard F. Griffin, Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Kira D. Vol*, Supervisory Attorney.

Before: SRINIVASAN, MILLETT, and WILKINS, *Circuit Judges*.

MILLETT, *Circuit Judge*: Quicken Loans, Inc., a company that provides mortgage loan services, imposes a number of workplace rules on its mortgage bankers. As relevant here, Quicken forbids its mortgage bankers to use or disclose a broad range of personnel information without Quicken's prior written consent or to criticize publicly the company and its management. The National Labor Relations Board determined that those rules run afoul of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, because they unreasonably burden the employees' ability to discuss legitimate employment matters, to protest employer practices, and to organize. Because there was nothing arbitrary or capricious about that decision and no abuse of discretion in the Board's hearing process, we deny Quicken's petition for review and grant the Board's cross-application for enforcement.

**I**

**A**

Section 7 of the National Labor Relations Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. § 157. Those rights "necessarily encompass[]" employees' rights to communicate with one another and with third parties about collective action and organizing a union, *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 491 (1978), as well as to "seek to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the

immediate employee-employer relationship," *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978). Section 7 thus protects employees' rights to discuss organization and the terms and conditions of their employment, to criticize or complain about their employer or their conditions of employment, and to enlist the assistance of others in addressing employment matters. *See, e.g.*, *Beth Israel Hospital*, 437 U.S. at 491; *Stanford Hospital and Clinics v. NLRB*, 325 F.3d 334, 343 (D.C. Cir. 2003); *Tradesmen, Int'l, Inc. v. NLRB*, 275 F.3d 1137, 1141 (D.C. Cir. 2002). Employers that "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by Section 7 commit an unfair labor practice, 29 U.S.C. § 158(a)(1), and are subject to civil sanction by the Board, *id.* § 160(a).

Whether workplace rules run afoul of Section 7's protections turns on an objective inquiry into "'whether the rules would reasonably tend to chill employees in the exercise' of their statutory rights." *Adtranz ABB Daimler-Benz Transp. v. NLRB*, 253 F.3d 19, 25 (D.C. Cir. 2001) (quoting *Lafayette Park Hotel*, 326 NLRB 824, 825 (1998)). Unreasonable chilling of lawful employee activities can take two forbidden forms. First, a rule could on its face restrict protected Section 7 activity by, for example, explicitly barring employees from complaining to third parties about their working conditions. *Guardsmark, LLC v. NLRB*, 475 F.3d 369, 374–375 (D.C. Cir. 2007).

Second, even if facially unobjectionable, a rule is invalid if (i) "'employees would reasonably construe the language to prohibit Section 7 activity'"; (ii) the rule "'was promulgated in response to union activity'"; or (iii) "'the rule has been applied to restrict the exercise of Section 7 rights.'" *Guardsmark*, 475 F.3d at 374 (quoting *Martin Luther Memorial Home*, 343 NLRB 646, 647 (2004)).

In asking whether a workplace rule either expressly infringes Section 7 rights or would reasonably be understood to do so, courts "focus[] on the text of the challenged rule." *Guardsmark*, 325 F.3d at 379. That means that the "'mere maintenance' of a rule likely to chill section 7 activity, whether explicitly or through reasonable interpretation, can amount to an unfair labor practice 'even absent evidence of enforcement'" of the rule by the employer. *Id.* (quoting *Lafayette Park Hotel*, 326 NLRB 824, 825 (1998), *enforced sub nom. Lafayette Park Hotel v. NLRB*, 203 F.3d 52 (Table) (D.C. Cir. 1999)).

**B**

Quicken provides mortgage loan services through branch offices located across the United States. The company employs approximately 1,700 mortgage bankers who process loan applications, negotiate the terms of mortgage loans, and provide other financial services to Quicken's clients. As a condition of employment, each Quicken mortgage banker is required to sign a "Mortgage Banker Employment Agreement" that contains several mandatory rules and restrictions. Two of those rules are at issue here: the Proprietary/Confidential Information Rule ("Confidentiality Rule") and the Non-Disparagement Rule.

As relevant here, the Confidentiality Rule defines "Proprietary/Confidential Information" to include "non-public information relating to or regarding the Company's business, personnel, customers, operations or affairs." J.A. 32. The Rule further defines confidential "Personnel Information" as "including, but not limited to, all personnel lists, rosters, personal information of co-workers, managers, executives and officers; handbooks, personnel files, personnel information

such as home phone numbers, cell phone numbers, addresses, and email addresses." *Id.* at 33.

For all of that information, mortgage bankers must "agree that" they will (i) "hold and maintain [it] in the strictest of confidence"; (ii) "not disclose, reveal or expose" that information to "any person, business or entity"; (iii) not use "any [of that] [i]nformation for any purpose except as may be authorized by the Company in writing"; and (iv) "take all necessary precautions to keep [that] [i]nformation secret, private, concealed and protected from disclosure[.]" J.A. 22.

The Non-Disparagement Rule, for its part, provides that:

The Company has internal procedures for complaints and disputes to be addressed and resolved. You agree that you will not (nor will you cause or cooperate with others to) publicly criticize, ridicule, disparage or defame the Company or its products, services, policies, directors, officers, shareholders, or employees, with or through any written or oral statement or image (including, but not limited to, any statements made via websites, blogs, postings to the internet, or emails and whether or not they are made anonymously or through the use of a pseudonym). You agree to provide full cooperation and assistance in assisting the Company to investigate such statements if the Company reasonably believes that you are [the] source of the statements. The foregoing does not apply to statutorily privileged statements made to governmental or law enforcement agencies.

J.A. 29.

6

**C**

Lydia Garza began working as a mortgage banker in Quicken's Scottsdale, Arizona office in 2006, and signed a copy of the Employment Agreement containing both the Confidentiality and Non-Disparagement Rules. In 2011, she resigned and took a job with one of Quicken's competitors. Quicken then sued Garza for violating no-contact/no-raiding and no-competition provisions of the Employment Agreement. Garza responded by filing an unfair labor practice charge with the National Labor Relations Board alleging that the Confidentiality and Non-Disparagement Rules interfered with Quicken employees' Section 7 rights, in violation of the National Labor Relations Act. The Board's Regional Director accepted Garza's charge, and filed an unfair labor practice complaint against Quicken alleging that the challenged Rules violated Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1).

A Board administrative law judge conducted an evidentiary hearing on the Regional Director's complaint. During that hearing, the ALJ excluded as irrelevant certain evidence that Quicken wanted to introduce concerning Garza's understanding of the challenged rules. Specifically, Quicken sought to introduce evidence about (i) whether Garza had read the Employment Agreement prior to signing it, (ii) what conduct Garza believed the Agreement prohibited, (iii) whether Garza believed that she had violated the contested Rules, and (iv) whether Garza had discussed the Agreement with her managers or supervisors at the company. The ALJ also barred as irrelevant evidence concerning the process by which Quicken recruited employees and the types of personnel information that were available on the Company's internal website.

The ALJ subsequently sustained the Regional Director's complaint, finding that both of Quicken's Rules violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), because they interfered with Quicken employees' Section 7 rights. With respect to the Confidentiality Rule, the ALJ had "no doubt" that the Rule's prohibition against disclosing personnel information, including "all personnel lists, personal information of co-workers * * * [and] personnel information such as home phone numbers, cell phone numbers, addresses and email addresses" would "substantially hinder employees in the exercise of their Section 7 rights." J.A. 160. That is because the rule flatly forbade employees "to discuss with others, including their fellow employees or union representatives, the wages and other benefits that they receive," and "the names, wages, benefits, addresses or telephone numbers of other employees." *Id.*

The ALJ also concluded that the Non-Disparagement Rule was invalid because it prohibited employees from "publicly criticiz[ing], ridicul[ing], disparag[ing] or defam[ing] the Company or its products, services, [or] policies * * * through any written or oral statement." J.A. 160. "[E]mployees are allowed to criticize their employer and its products as part of their Section 7 rights," the ALJ explained. *Id.* So any mortgage banker reading those restrictions "could reasonably construe them as restricting his rights to engage in protected concerted activities." *Id.*

The ALJ accordingly ordered Quicken to rescind both the Confidentiality and Non-Disparagement Rules.

The Board affirmed the ALJ's ruling as to the Non-Disparagement Rule, but amended the remedy for the Confidentiality Rule. With respect to the latter, the Board

required that Quicken "rescind only the offending language" on which the ALJ had relied—that is, the portions of the Rule prohibiting disclosure of "non-public information relating to or regarding * * * personnel" and "personnel information, including * * * all personnel lists, rosters, personal information of co-workers, * * * handbooks, personnel files, personnel information such as home phone numbers, cell phone numbers, addresses, and email addresses[.]" J.A. 156, 162. The Board did not disturb the ALJ's evidentiary rulings.

## II

Our review of the Board's decision is limited. Congress has entrusted the Board with implementing Sections 7 and 8(a)(1) of the Act and determining, in the first instance, when an employer's workplace rules run afoul of those provisions. *See Adtranz*, 253 F.3d at 25. The Board's determinations accordingly "are entitled to considerable deference," *id.*, and will be sustained as long as the Board "'faithfully applies'" the legal standards, and its textual analysis of a challenged rule is "'reasonably defensible'" and adequately explained, *Guardsmark*, 475 F.3d at 374 (quoting *Adtranz*, 253 F.3d at 25). *See Cintas Corp. v. NLRB*, 482 F.3d 463, 467 (D.C. Cir. 2007).

## A

The Board properly determined that Quicken's Confidentiality Rule, as applied to personnel information, directly impinged upon employees' Section 7 rights. The very information that portion of the Rule explicitly forbids employees to share—personnel lists, employee rosters, and employee contact information—has long been recognized as information that employees must be permitted to gather and share among themselves and with union organizers in exercising their Section 7 rights. *See, e.g.*, *International*

*Union of Electrical, Radio and Machine Workers v. NLRB*, 502 F.2d 349, 351 (D.C. Cir. 1974) (Board may require company to provide union "with a list of names and addresses of its employees" as "necessary and appropriate to guarantee that rights conferred by section 7 will not be denied[.]"); *see also Albertsons, Inc.*, 351 NLRB 254, 259 (2014) (confidentiality rule cannot prevent employee from providing list of employee names to union organizers); *HTH Corp.*, 356 NLRB 1397, 1421 n.19 (2011) ("[T]he names and addresses of fellow employees cannot" be "held confidential" because that would "inhibit[] employees from engaging in conduct protected by Sec. 7."), *enforced sub nom. Frankl v. HTH Corp.*, 693 F.3d 1051 (9th Cir. 2012); *Ridgley Manufacturing Co.*, 207 NLRB 193, 196–197 (1973) ("[M]emorizing the names of fellow employees from the timecards for the purpose of contacting them concerning union representation" was "protected activity" under the Act.), *enforced sub nom. Ridgley Manufacturing Co. v. NLRB*, 510 F.2d 185 (D.C. Cir. 1975).

So too for "handbooks" and other types of workplace information contained in "personnel files." J.A. 33. Quicken's blanket prohibition directly interferes with mortgage bankers' ability to discuss their wages and other terms and conditions of employment with their fellow employees or union organizers, which is a core Section 7 right. *See, e.g.*, *Cintas Corp.*, 482 F.3d at 467–468; *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014) ("A workplace rule that forbids the discussion of confidential wage information between employees * * * patently violates [the Act.]") (internal quotation marks and alterations omitted); *NLRB v. Northeastern Land Services, Ltd.*, 645 F.3d 475, 478, 483 (1st Cir. 2011) (striking down rule that prevented discussion of the "terms of * * * employment, including compensation"); *Lily Transportation Corp.*, 362 NLRB No.

54, 1 & n.3 (2015) (barring confidentiality rule prohibiting disclosure of "employee information maintained in confidential personnel files" because "employees would reasonably conclude that this language barred them from disclosing information about wages and other terms and conditions of employment").

Quicken's objections to the Board's determination all fail. *First*, Quicken contends that the Board should have considered whether (i) Quicken employees actually construed the Confidentiality Rule to prohibit Section 7 activity, (ii) Garza herself had understood the Rule that way during her employment, or (iii) Quicken had ever enforced the Rule to interfere with Section 7 activity. *See* Pet. Br. 24–25. Those arguments, however, fail to come to grips with the governing law. The validity of a workplace rule turns not on subjective employee understandings or actual enforcement patterns, but on an objective inquiry into how a reasonable employee would understand the rule's disputed language. Thus "[t]he Board is merely required to determine whether 'employees *would reasonably* construe the [disputed] language to prohibit Section 7 activity, * * * and not whether employees *have* thus construed the rule." *Cintas Corp.*, 482 F.3d at 467; *see Guardsmark*, 475 F.3d at 375–376; *Lafayette Park Hotel*, 326 NLRB at 824, 825 (1998) ("[T]he mere maintenance" of rules that "are likely to have a chilling effect on Section 7 rights" violates the Act "even absent evidence of enforcement."), *enforced sub nom. Lafayette Park Hotel v. NLRB*, 203 F.3d 52 (Table) (D.C. Cir. 1999).

That objective inquiry serves an important prophylactic function: it allows the Board to block rules that might chill the exercise of employees' rights by cowing the employees into inaction, rather than forcing the Board to "wait[] until that chill is manifest," and then try to "undertake the difficult

task of dispelling it." *Flex Frac Logistics, LLC*, 358 NLRB 1131, 1132 (2012), *enforced sub nom. Flex Frac Logistics*, 746 F.3d 205. And the Board's concern about discouraging protected employee activities exists just the same "whether or not that is the intent of the employer." *Id.* Quicken's complaints about the Board's analysis thus ignore the National Labor Relations Act's proactive role in safeguarding employees' rights. *See id.* (noting the "Act's goal of preventing employees from being chilled in the exercise of their Section 7 rights").

*Second*, Quicken argues (Pet. Br. 26–28) that the Board overlooked the company's "substantial and legitimate interest" in protecting its non-public information in a business that is "highly-regulated, competitive, and involves substantial and significant confidential and proprietary information." *Id.* at 28. But by carefully confining its decision to the Confidentiality Rule's operation on the types of personnel information protected by Section 7, J.A. 162, the Board left portions of the Rule protecting proprietary information intact, and it afforded Quicken adequate room to revise and "narrowly tailor[] the * * * rule to achieve its goal without interfering with section 7 activity," *Guardsmark*, 475 F.3d at 376. *See Cintas Corp.*, 482 F.3d at 470; *see also Community Hospitals of Central California v. NLRB*, 335 F.3d 1079, 1088 (D.C. Cir. 2003) (upholding rule that was narrowly tailored to achieve the employer's purpose without chilling protected activity). Indeed, the Board openly invited Quicken to revise its Confidentiality Rule to contain "the language of lawful rules." J.A. 162. In any event, Quicken's claim that some *sub-portion* of the covered information could properly be protected does nothing to legitimate the blunderbuss sweep of its existing rule.

*Third*, Quicken argues that the Board ignored that the Rule's "disputed language only protects *non-public* information of co-workers." Pet. Br. 29. That matters, Quicken says, because the company "widely publicize[d] information related to what it pays employees, its compensation structure, benefits plans, and virtually all other terms and conditions of employment," so (in Quicken's view) no employee would construe the Rule as preventing the disclosure of similar information to co-workers or union organizers. *Id.* at 30. The problem with that argument is that the so-called "widely publicized" personnel information to which Quicken refers is little more than a general description on its recruiting website of the mortgage banker position and the generic salary and benefits packages that might be available to successful applicants. *See id.* at 4–6. It beggars belief—or so the Board could reasonably find—that Quicken's mortgage bankers would view the company's publication of such generalized information as relaxing the Rule's explicit and absolute prohibition against employees disclosing all manner of "personnel information," including *actual* employee pay and benefits. J.A. 33.

Quicken also claims that contact information for mortgage bankers would not be understood to be "non-public" because it is available on an *internal* company website. Pet. Br. 3–4. That makes no sense. Information that is only available internally is, by definition, not "public."

Quicken next argues that identities, work addresses, and work phone numbers of its mortgage bankers are available through publicly accessible third-party databases. *See* Pet. Br. 3–4. That misses the point. The Section 7 problem is that Quicken cannot forbid employees to *themselves* discuss and disclose personnel information bearing on their investigation and discussion of employment conditions or organizational

efforts. Nor can Quicken compel employees to hazard potentially career-imperiling guesses about whether the Employment Agreement—that Quicken unilaterally drafted and required them to sign—means what it says and says what it means.

**B**

The Non-Disparagement Rule similarly flies in the teeth of Section 7. That Rule, by its plain terms, bars mortgage bankers from "publicly criticiz[ing], ridicul[ing], disparag[ing] or defam[ing] the Company or its products, services, policies, directors, officers, shareholders, or employees" in any written or oral statement, including on the internet or even in private emails. J.A. 29. The Board quite reasonably found that such a sweeping gag order would significantly impede mortgage bankers' exercise of their Section 7 rights because it directly forbids them to express negative opinions about the company, its policies, and its leadership in almost any public forum. *See Guardsmark*, 475 F.3d at 374–375 (striking down rule that only allowed employees to complain internally); *Hills and Dales General Hospital*, 360 NLRB No. 70, 2 (2014) (invalidating a workplace rule requiring employees to represent the company "in a positive and professional manner" because it would "discourage employees from engaging in protected public protests of unfair labor practices, or from making statements to third parties protesting their terms and conditions of employment"); *KSL Claremont Resort, Inc.*, 344 NLRB 832, 832 (2005) (invalidating rule that prohibited "negative conversations about associates or managers" because employees would reasonably construe it to bar "discussing with their coworkers complaints about their managers that affect [their] working conditions").

Quicken claims (Pet. Br. 38) that employees would read the Rule as welcoming public complaints because the Rule references the company's "internal procedures for complaints and disputes to be addressed and resolved," J.A. 29. Quite the opposite. Pointing employees to an *internal* process for venting their complaints underscores that—as the Rule plainly says—employees may not air their grievances in public.

Quicken also notes that the Rule contains an exception for "statutorily privileged" statements that are "made to government or law enforcement agencies." J.A. 29. That only digs the hole deeper. The very narrowness of the exception emphasizes to employees that disclosures to non-governmental personnel—like co-workers and union officials—are forbidden.

Quicken's next argument is that mortgage bankers are supposed to know that they can pursue their disputes with the company "in *public* forums" because another section of the Employment Agreement contains a clause identifying the courts in which suits relating to the Agreement and other employment matters must be brought. Pet. Br. 38 (citing J.A. 30). It should go without saying that an employer's selection of the courts in which it can be sued is not the same at all as permitting workers to voice their employment complaints publicly.

Finally, Quicken stresses the absence of evidence that Quicken actually enforced the Non-Disparagement Rule to restrict mortgage bankers' rights under the National Labor Relations Act. That is beside the point. The absence of enforcement could just as readily show that employees had buckled under the Employment Agreement's threat of enforcement. "[H]aving concluded that employees would reasonably read the rule to prohibit [the exercise of Section 7

rights], the Board had no need to consider the absence of enforcement" in concluding that the rule violates the Act. *Guardsmark*, 475 F.3d at 377; *see id.* at 374 (The "mere maintenance" of a challenged rule can violate Section 8(a)(1) "even absent evidence of enforcement[.]").

## III

Quicken also lodges a procedural complaint, arguing that the Board erroneously excluded its evidence about whether Garza (i) actually read the Employment Agreement prior to filing her charge; (ii) subjectively believed that the Agreement forbade protected conduct; (iii) believed she had violated the Confidentiality and Non-Disparagement Rules; or (iv) discussed the Agreement with her managers or supervisors at Quicken. Quicken also sought to introduce evidence of its recruitment methods for mortgage bankers and the types of employment information available on the internal company website.

The Board's evidentiary rulings must be sustained unless they were an abuse of discretion and unduly prejudiced the complaining party. *See Salem Hospital Corp. v. NLRB*, 808 F.3d 59, 67–68 (D.C. Cir. 2015). Reversible prejudice exists only if admission of the excluded evidence would have "'compel[led] or persuade[d] to a contrary result.'" *Reno Hilton Resorts v. NLRB*, 196 F.3d 1275, 1285 n.10 (D.C. Cir. 1999) (quoting *Cooley v. FERC*, 843 F.2d 1464, 1473 (D.C. Cir. 1988)).

The Board's evidentiary determination was not even close to an abuse of discretion. Because the governing legal inquiry was whether Quicken's Rules on their face or as understood by a reasonable employee would chill the exercise of Section 7 rights, Quicken's proffered evidence about how Garza in particular understood the Rules or reacted to them

was off the mark. *See Cintas Corp.*, 482 F.3d at 467 (Evidence of "employees' actual interpretation of the confidentiality rule" is not "required to support the Board's conclusion that the rule is overly broad and thus unlawful[.]").

Likewise, Quicken's argument about the relevance of its recruitment methods and the availability of some personnel information on its internal website simply recycles the already-rejected claim that those crumbs of information cured the Confidentiality Rule's plain prohibition on protected employee communications.

In sum, because Quicken's arguments misconceive the relevancy of information under the governing legal test, the evidence's exclusion was both proper and entirely non-prejudicial.

## IV

The Board appropriately determined that employees would reasonably construe the sweeping prohibitions in Quicken's Confidentiality and Non-Disparagement Rules as trenching upon their rights to discuss and object to employment terms and conditions, and to coordinate efforts and organize to promote employee interests. Accordingly, the Board properly concluded that Quicken's adoption and maintenance of those Rules ran afoul of Sections 7 and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 157, 158(a)(1). The Board's evidentiary rulings were also well within the bounds of its discretion. We therefore deny Quicken's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*