# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 5, 2013       Decided November 6, 2015

No. 11-1351

HYUNDAI AMERICA SHIPPING AGENCY, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 11-1413

———

On Petition for Review and Cross-Application for
Enforcement of an Order of
the National Labor Relations Board

———

*Thomas A. Lenz* argued the cause and filed the briefs for petitioner.

*Heather S. Beard*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Ruth E. Burdick*, Supervisory Attorney.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: We review an order of the National Labor Relations Board invalidating five rules in the employee handbook maintained by the Hyundai America Shipping Agency. Though the case was argued in February 2013, we placed it in abeyance the same month, pending the Supreme Court's decision in *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014). That decision made clear that the three Board members on the panel in this case were validly appointed, and in December 2014 we restored the case to the court's active docket.

The Board had found that Hyundai's maintenance of the five handbook rules violated § 8(a)(1) of the National Labor Relations Act, which requires that employers not "interfere with, restrain, or coerce employees in the exercise of" their rights—enumerated in § 7—to form labor organizations, bargain collectively, and engage in similar concerted activities. 29 U.S.C. §§ 157, 158(a)(1). (The Board reversed two other rule invalidations by the administrative law judge; these are not at issue and we disregard them in our account of the Board's process.)

The case began with a charge by Sandra McCullough, a former Hyundai employee, alleging that Hyundai fired her "because she engaged in protected concerted activities," thus violating her § 7 rights. Joint Appendix ("J.A.") 42. This led to a complaint by the Board's General Counsel alleging not only that McCullough's dismissal violated the NLRA but also that Hyundai had unlawfully maintained five rules violating § 8(a)(1) on their face. The ALJ found that Hyundai would have fired McCullough regardless of whether she had violated any of the challenged rules, and the Board affirmed. *Hyundai America Shipping Agency, Inc. & Sandra L. McCullough*, 357

N.L.R.B. No. 80, 2011 WL 4830117, at *2 (August 26, 2011) ("*Order*"). So McCullough herself is out of the case. But the ALJ went on to find that all five rules violated § 7. The Board affirmed that conclusion as well, and Hyundai appealed.

Our first task is to resolve whether the complaint's allegations against the five rules were properly before the Board. As we'll explain below, we find that the Board had jurisdiction over the claims against four rules—ones that the complaint linked to the dismissal by asserting that Hyundai discharged McCullough because of her violations of those rules. Not so as to the fifth; as to it, the Board lacked jurisdiction because the General Counsel never alleged it to have played a causal role in the dismissal. As to the four rules properly before the Board, we enforce the Board's order as to three but reverse as to the fourth.

* * *

*Jurisdiction*. Under 29 U.S.C. § 160(b), the General Counsel may pursue a charge by issuing a complaint, but the complaint's allegations must be "closely related" to that charge. *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1021 (D.C. Cir. 1995) (citing *Nickles Bakery of Indiana, Inc.*, 296 N.L.R.B. 927, 928 (1989)). To decide whether such a close relationship exists, "the Board looks to whether a complaint allegation (1) involves the same legal theory as the charge allegation, (2) arises from the same factual circumstances or sequence of events as the charge allegation, and (3) raises similar defenses as the charge allegation." *Id. Drug Plastics* also establishes *how* to apply the test. There we adopted the dissenting view of then-Judge Stevens in *NLRB v. Braswell Motor Freight Lines, Inc.*, 486 F.2d 743 (7th Cir. 1973), and held that "the Board's jurisdiction should be tested by the General Counsel's allegations rather than his proof." *Id*. at 747. Moreover, factual relatedness is evaluated "as of

the time of the allegations." *Drug Plastics*, 44 F.3d at 1020. In other words, the jurisdictional inquiry is wholly independent of the General Counsel's actual success in proving the alleged relationship.

The *Drug Plastics* standard is met as to four rules whose violation the complaint said caused McCullough's dismissal. For them, the complaint's allegations invoked the charge's legal theory (that McCullough was fired for exercising her § 7 rights), arose from the same sequence of events (the firing), and would give rise to similar defenses (most notably, that Hyundai would have fired McCullough for other reasons had she not violated the challenged rules). But as to the fifth rule, relating to information in the company's personnel files, the absence of any alleged link to McCullough's firing is fatal to any claim of the requisite relationship.

*Merits.* The four disputed rules that satisfied *Drug Plastics* were: (1) a rule prohibiting employees from discussing matters under investigation by Hyundai ("investigative confidentiality rule"), Compl. ¶ 4(b), J.A. 44; (2) a rule limiting the disclosure of information from Hyundai's electronic communication and information systems ("electronic communications rule"), Compl. ¶ 4(d), J.A. 44-45; (3) a rule prohibiting activities other than work during working hours ("working hours rule"), Compl. ¶ 4(g), J.A. 46; and (4) a provision urging employees to make complaints to their immediate supervisors rather than to fellow employees ("complaint provision"), Compl. ¶ 4(f), J.A. 45-46.

We address the four in that order. As usual, we accept the Board's findings of fact if they are supported by substantial evidence, 29 U.S.C. § 160(e), and we defer to the Board's reasonable interpretations of the National Labor Relations Act under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984),

"which . . . means (within its domain) that a 'reasonable agency interpretation prevails.'" *Northern Natural Gas Co. v. FERC*, 700 F.3d 11, 14 (D.C. Cir. 2012) (quoting *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 n.4 (2009)).

To decide whether an employer's rule violates § 8(a)(1), the Board asks "whether the rule[ ] would reasonably tend to chill employees in the exercise of their statutory rights." *Guardsmark v. NLRB*, 475 F.3d 369, 374 (D.C. Cir. 2007) (citations and internal quotation marks omitted). That inquiry requires the Board to determine, first, whether the rule restricts § 7 activity explicitly. If the rule does not do so—and none of these rules does—the Board asks next whether the rule (1) could be reasonably construed by employees to restrict § 7 activity, (2) was adopted in response to such activity, or (3) has been used to restrict such activity. *Id.* An affirmative answer to any of these three questions means that the employer can retain the rule only by showing an adequate justification.

There is no allegation that Hyundai's rules were promulgated in response to protected concerted activity, and the Board does not suggest that Hyundai applied them to restrict such activity. Rather, the Board found that the rules ran afoul of the first of the three tests, i.e., were facially invalid. The Board's reasoning is that, even in the absence of enforcement, "mere maintenance of a rule likely to chill section 7 activity, whether explicitly or through reasonable interpretation, can amount to an unfair labor practice." *Id.* (citations and internal quotation marks omitted).

On review, we ask whether the Board reasonably concluded that "employees would reasonably construe [each rule] to prohibit Section 7 activity." *Cintas Corp. v. NLRB*, 482 F.3d 463, 468 (D.C. Cir. 2007) (citations and internal

quotation marks omitted). We accept the Board's conclusions with respect to all but the employee complaint provision.

*Investigative confidentiality rule*: The Board found, and Hyundai does not dispute, that Hyundai maintained an oral rule prohibiting employees from revealing information about matters under investigation. *Order*, 2011 WL 4830117, at *26. Since this blanket confidentiality rule clearly limited employees' § 7 rights to discuss their employment, the question is whether Hyundai has presented a legitimate and substantial business justification for the rule, outweighing the adverse effect on the interests of employees. *Desert Palace, Inc.*, 336 N.L.R.B. 271, 272 (2001); see also *Jeannette Corp. v. NLRB*, 532 F.2d 916, 918 (3d Cir. 1976).

Hyundai argues that federal and state antidiscrimination statutes and guidelines, which require confidentiality in many investigations, constitute a legitimate and substantial business justification for its rule. For example, Equal Employment Opportunity Commission guidelines suggest that information about sexual harassment allegations, as well as records related to investigations of those allegations, should be kept confidential. Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, § V(C)(1) (915.002, June 18, 1999), available at http://www.eeoc.gov/policy/docs/harassment.html. We agree that the obligation to comply with such guidelines may often constitute a legitimate business justification for requiring confidentiality in the context of a particular investigation or particular types of investigations. But Hyundai has not shown that these concerns offer a legitimate business reason to ban discussions of *all* investigations, including ones unlikely to present these concerns. The Board therefore reasonably concluded that the rule was overbroad.

In enforcing the Board's order, we need not and do not endorse the ALJ's novel view that in order to demonstrate a legitimate and substantial justification for confidentiality, an employer must "determine whether in any give [sic] investigation witnesses need protection, evidence is in danger of being destroyed, testimony is in danger of being fabricated, and there is a need to prevent a cover up." *Order*, 2011 WL 4830117, at *27. Instead, we simply hold that Hyundai's confidentiality rule was so broad and undifferentiated that the Board reasonably concluded that Hyundai did not present a legitimate business justification for it.

*Electronic communications rule*: Hyundai's employee handbook included a rule describing limitations on the use of the company's electronic communications systems and concluding with the requirement that "employees should only disclose information or messages from theses [sic] systems to authorized persons." Compl. ¶ 4(d), J.A. 45. The Board held that a reasonable employee could read this rule to prevent the sharing of any information exchanged on Hyundai's electronic communications network, thereby restricting employees' ability to share information about the terms and conditions of employment. We note the somewhat academic nature of the dispute: both parties agree that the electronic communications rule cannot legally *apply* to information about terms and conditions of employment (absent adequate justification). There is therefore no substantive dispute over the scope of the employer's authority to maintain confidentiality.

We hold that the Board's conclusion was a reasonable application of the existing case law. The disposition of this issue depends largely on whether the electronic communications rule is more analogous to the policy challenged in *Community Hospitals of Central California v. NLRB*, 335 F.3d 1079 (D.C. Cir. 2003), or to the rule at issue in *Cintas*, 482 F.3d at 465, 468-70. In *Community Hospitals*,

335 F.3d at 1089, we reversed the Board's order invalidating a handbook rule prohibiting "[r]elease or disclosure of confidential information concerning patients or employees," *id.* at 1088. We concluded that a reasonable employee would not interpret the rule to ban discussion of the terms of his or her own employment. In *Cintas*, 482 F.3d at 468-69, by contrast, this court enforced the Board's order invalidating a policy that protected "the confidentiality of any information concerning the company," *id.* at 465. We distinguished that policy from the rule in *Community Hospitals* on the ground that the latter expressly limited its prohibition to confidential information. *Id.* at 470.

Hyundai's rule, unlike the one we held lawful in *Community Hospitals*, is not limited by its terms to confidential information. A reasonable reader, however, might interpret the provision to apply only to such information, just as a reasonable reader of the rule in *Community Hospitals* would understand confidential information to exclude the terms and conditions of his or her own employment. *Community Hospitals*, 335 F.3d at 1089. Since these two cases do not clearly dictate the result in this case, we defer to the Board's reasonable conclusion that *Cintas* controls and that the electronic communications rule is invalid.

*Working hours rule*: Hyundai's employee handbook included a rule allowing disciplinary action, including termination, for "[p]erforming activities other than Company work during working hours." Compl. ¶ 4(g), J.A. 46. The Board invalidated this rule because it prohibited employees from engaging in union-related activities even during breaks. We have previously accepted the Board's distinction between "working time," which excludes breaks, and "working hours," describing the period from the beginning to the end of a shift, breaks and all. *United Servs. Auto. Ass'n v. NLRB*, 387 F.3d

908, 914 (D.C. Cir. 2004). Restrictions on union activity during working hours are presumptively invalid; similar restrictions during working time are not. *Id.* Applying this distinction, the Board reasonably concluded that Hyundai's rule restricted union activity during a work shift but outside of working time.

*Complaint Provision*: Hyundai's Employee Handbook included an employee conduct provision:

> Voice your complaints directly to your immediate superior or to Human Resources through our 'open door' policy. Complaining to your fellow employees will not resolve problems. Constructive complaints communicated through the appropriate channels may help improve the workplace for all.

Compl. ¶ 4(f), J.A. 45-46. The ALJ concluded that this rule implicitly prohibited complaints protected by § 7. We disagree. In *Guardsmark*, 475 F.3d at 376, we enforced the Board's order invalidating a rule banning workplace complaints because the rule prevented employees from complaining to customers or to other non-supervisor employees. In enforcing that order, however, we relied specifically on the rule's "mandatory language." *Id*; see also *SNE Enters., Inc.*, 347 N.L.R.B. 472, 492 (2006) (invalidating anti-complaint rule that led to dismissal of employee); *Kinder-Care Learning Centers*, 299 N.L.R.B. 1171 (1990) (invalidating policy that expressly prohibited complaints to customers and threatened disciplinary action for noncompliance).

Here, by contrast, the handbook urges employees to voice their complaints to their supervisors or to Human Resources, but the language is neither mandatory nor preclusive of alternatives: "Constructive complaints communicated through

the appropriate channels *may* help improve the workplace for all" (emphasis added). Moreover, the handbook does not prescribe penalties for complaints to fellow employees. A reasonable employee would not read the provision, with its exhortatory language and lack of penalties, to prohibit complaints protected by § 7.

\* \* \*

In sum, we enforce the Board's order with respect to the investigative confidentiality rule, the working hours rule, and the electronic communications rule. We grant the petition for review, and reverse the Board's order, with respect to the employee complaint rule and the personnel file rule.

*So ordered.*