# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 6, 2017          Decided March 24, 2017

No. 15-1245

BANNER HEALTH SYSTEM, DOING BUSINESS AS BANNER
ESTRELLA MEDICAL CENTER,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 15-1309

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Mark G. Kisicki* argued the cause for petitioner. With him
on the briefs was *Elizabeth M. Townsend*.

*Maurice Baskin* and *Elizabeth Parry* were on the joint
brief for *amici curiae* for American Hotel & Lodging
Association, et al. in support of petitioner.

*Allyson N. Ho*, *John C. Sullivan*, and *Judd E. Stone* were on the brief for *amicus curiae* Association of Corporate Counsel in support of petitioner.

*Joel A. Heller*, Attorney, National Labor Relations Board, argued the cause for respondent.  With him on the brief were *Richard F. Griffin, Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Usha Dheenan*, Supervisory Attorney.

Before: PILLARD, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  This case requires us to decide whether an employer's effort to keep certain information confidential ran afoul of its employees' established rights under federal labor law to share employment-related information with one another in an effort to improve their lot.  The National Labor Relations Board concluded that petitioner Banner Health's Confidentiality Agreement unlawfully barred its workers from sharing information at the heart of labor law's concern:  information about salaries and employee discipline.  The Board also determined that Banner unlawfully maintained a categorical policy of asking employees not to discuss certain kinds of human resources investigations.  Such investigative nondisclosure policies, the Board held, may only be applied on a case-by-case basis following a threshold determination that confidentiality is necessary to the particular investigation.

The Board's invalidation of the Confidentiality Agreement was reasonable and supported by substantial evidence, and we therefore grant the application for enforcement on that issue.  But, because the record lacks substantial evidence that Banner

actually maintained a categorical investigative nondisclosure policy, we grant the petition for review and deny enforcement as to that portion of the Board's Order.

## I. Background

Banner Health is a large, nonprofit healthcare system that includes Banner Estrella Medical Center in Phoenix, AZ. James Navarro worked at Banner Estrella sterilizing surgical equipment. On February 19, 2011, Navarro learned that he could not use the autoclave—a large, pressurized steam sterilizer normally used for sterilizing reusable medical instruments—because the hospital's steampipe needed to be fixed. He was instructed to use hot water from the coffee machine in the break room for the first step in the cleaning process, and then to use a low-temperature sterilizer with hydrogen peroxide. Navarro was concerned that those procedures violated established protocol. He raised questions with various supervisors and did some quick research that did not allay his concerns. After confirming there were adequate clean instruments available for the day's scheduled surgeries and deliveries, Navarro did not sterilize additional instruments. His supervisor was not pleased. A couple of days later, Navarro visited Banner's human resources consultant, JoAnn Odell, reporting his discomfort with the prescribed procedures and expressing concern for his job. That afternoon, Navarro's supervisor gave him a "nondisciplinary coaching" and, a few days later, a negative yearly evaluation.

Navarro filed an unfair labor practice charge with the Board, prompting the Board's Regional Director to file a retaliation complaint against Banner. Based on documents unearthed during discovery, the Regional Director amended the complaint to include claims that Banner (1) made employees sign an overbroad Confidentiality Agreement and (2)

maintained an overbroad rule requiring nondisclosure of investigative interviews.

The main evidence supporting the first claim was the Confidentiality Agreement itself. The Agreement defined "confidential information" to include, as relevant here, "[p]rivate employee information (such as salaries, disciplinary action, etc.) that is not shared by the employee." J.A. 86. The Agreement further stated that "[k]eeping this kind of information private and confidential is so important that if I fail to do so, I understand that I could be subject to corrective action, including termination and possibly legal action." *Id.* According to Odell, all new Banner hires were required to sign this Agreement.

The primary evidence in support of the charge that Banner maintained an overbroad investigative nondisclosure policy was an "Interview of Complainant" form that Odell referred to during her interview of Navarro. That document contained prepared statements and questions for human resources interviewers to read, along with space for notes. It opened with an "Introduction for all interviews," part of which stated: "I ask you not to discuss this with your coworkers while this investigation is going on, for this reason, when people are talking it is difficult to do a fair investigation and separate facts from rumors." J.A. 81. The only other relevant evidence came from Odell's rather general and ambiguous testimony about how the interview form was used. Odell testified that Banner employees were never given a copy of that form and that she "request[ed]" nondisclosure "[h]alf a dozen [times], maybe" in her 13 months at Banner, and only "in the more sensitive situations." *See* Tr. 186, 193-96, 258-60. She said that, notwithstanding the form's reference to "all interviews," she did not "necessarily" request nondisclosure in every interview and did not do so of Navarro. *Id.* at 194. (Later in the

transcript, Odell appears to contradict herself as to Navarro, but Banner represents, without contradiction, that was a transcription error. *See* Pet'r Br. 13 n.1.) Navarro did not testify that he was asked to keep confidential the matter under investigation or his interview with Odell.

Odell also testified that she made nondisclosure requests only during investigations in which she needed to speak to more than one person, so as to "keep the investigation as pure as possible." *Id.* at 259. Asked whether there are "particular types of investigations that you have particular sensitivity issues where you may ask someone to keep things confidential," Odell mentioned sexual harassment, hostile work environment, and "[s]uspicion of abuse or something like that." *Id.* at 259-60. Neither her testimony nor any other evidence in the record, however, establishes whether Banner categorically requested investigative nondisclosure in those types of investigations, or whether Odell was instead giving examples of circumstances in which a case-specific decision in favor of a confidentiality request was more likely to be appropriate.

The ALJ held that Banner's Confidentiality Agreement violated the National Labor Relations Act, but that its investigative nondisclosure policy and its treatment of Navarro did not. *See Banner Health Sys.*, 358 NLRB 809, 812-15 (2012) (ALJ Op.). The Board affirmed the ALJ's decision in part, reversing only as to the investigative nondisclosure policy. As to both invalidation of the Confidentiality Agreement and rejection of Navarro's individual retaliation claim, the three-member Board panel was unanimous. A two-member majority further held, contrary to the ALJ's determination, that Banner had an unlawful policy of asking employees not to discuss certain types of workplace investigations without performing the requisite individualized

inquiry into the need for confidentiality. *See id.* at 809-11 (Board decision). We vacated and remanded the Board's decision following *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014). *See Banner Health Sys. v. NLRB*, No. 12-1359, Doc. 1505654 (D.C. Cir. Aug. 1, 2014) (per curiam order). A properly constituted three-member panel thereafter reached the same conclusions as the prior panel, again over one member's partial dissent. *See Banner Health Sys.*, 362 NLRB No. 137 (2015).

## II. Legal Framework

Section 7 of the National Labor Relations Act guarantees covered employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Thus, the Act "protects employees' rights to discuss organization and the terms and conditions of their employment, to criticize or complain about their employer or their conditions of employment, and to enlist the assistance of others in addressing employment matters." *Quicken Loans, Inc. v. NLRB*, 830 F.3d 542, 545 (D.C. Cir. 2016). Under "settled Board precedent," the right to discuss the terms and conditions of employment encompasses the "right to discuss discipline or disciplinary investigations with fellow employees." *Inova Health Sys. v. NLRB*, 795 F.3d 68, 85 (D.C. Cir. 2015).

Section 8(a)(1) of the Act makes it an "unfair labor practice" to "interfere with, restrain, or coerce employees in the exercise of [Section 7] rights." 29 U.S.C. § 158(a)(1). Employers that violate Section 8 are subject to civil sanction by the Board. *Id.* at § 160(a). Where an employer's rule does not explicitly limit Section 7 activity, the Board asks "whether

the rule (1) could be reasonably construed by employees to restrict [such] activity, (2) was adopted in response to such activity, or (3) has been used to restrict such activity." *Hyundai Am. Shipping Agency, Inc. v. NLRB*, 805 F.3d 309, 313-14 (D.C. Cir. 2015).

Whether an employer's rule could be reasonably construed to restrict protected activity is an "objective inquiry" in which "courts focus on the text of the challenged rule." *Quicken Loans*, 830 F.3d at 545-46 (internal quotation marks and alteration omitted). Any ambiguity in the rule is construed against the employer. *Cintas Corp. v. NLRB*, 482 F.3d 463, 468 n.2 (D.C. Cir. 2007) (citing *Lafayette Park Hotel*, 326 NLRB 824, 828 (1998)). "[T]he mere maintenance of a rule likely to chill section 7 activity, whether explicitly or through reasonable interpretation, can amount to an unfair labor practice even absent evidence of enforcement of the rule by the employer." *Quicken Loans*, 830 F.3d at 546 (quoting *Guardsmark, LLC v. NLRB*, 475 F.3d 369, 379 (D.C. Cir. 2007)) (internal quotation marks omitted). Maintaining a rule that is reasonably likely to chill Section 7 activity is an unfair labor practice unless the employer "present[s] a legitimate and substantial business justification for the rule, outweighing the adverse effect on the interests of employees." *Hyundai*, 805 F.3d at 314.

On review, the Board's determinations are "entitled to considerable deference." *Adtranz ABB Daimler-Benz Transp., N.A., Inc. v. NLRB*, 253 F.3d 19, 25 (D.C. Cir. 2001). The Court will uphold the Board's decision unless it "relied upon findings that are not supported by substantial evidence, failed to apply the proper legal standard, or departed from its precedent without providing a reasoned justification for doing so." *E.I. Du Pont De Nemours & Co. v. NLRB*, 682 F.3d 65, 67 (D.C. Cir. 2012).

### III. Analysis

*A. Confidentiality Agreement.* The Board's unanimous conclusion that Banner's Confidentiality Agreement struck at the heartland of Section 7 activity without adequate justification withstands our deferential review.

Banner's Confidentiality Agreement was overbroad. It explicitly directed employees not to discuss co-workers' "[p]rivate employee information (such as salaries, disciplinary action, etc.)" unless the information was "shared by the employee." J.A. 86. Banner insists that the Agreement was most reasonably read as limited to information Banner was entitled to suppress, and could not be "reasonably construed by employees to restrict § 7 activity." *Hyundai*, 805 F.3d at 313. But the ALJ squarely held, and the Board affirmed, that Banner's Agreement "could reasonably be construed to prohibit Section 7 activity." 358 NLRB at 814.

Our precedents on employees' Section 7 rights to discuss employment terms and conditions support the Board's decision. We have approved a hospital's rule barring discussion of "confidential information concerning patients or employees," because a reasonable employee would not assume that the term "confidential information" included information about the terms and conditions of employment—the free exchange of which is "essential[] to successful self-organizing." *Cmty. Hosps. of Cent. California v. NLRB*, 335 F.3d 1079, 1088-89 (D.C. Cir. 2003). But we have disapproved a hospital's confidentiality rule where it more broadly prohibited discussion of "[i]nformation concerning patients, [employees], or hospital operations." *Brockton Hosp. v. NLRB*, 294 F.3d 100, 106-07 (D.C. Cir. 2002). At the same time, "confidential information" cannot itself "be defined so broadly as to include working conditions." *Double Eagle Hotel &*

*Casino v. NLRB*, 414 F.3d 1249, 1260 (10th Cir. 2005) (sustaining Board invalidation of policy defining "confidential information" to include salary information); *see also Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 209 (5th Cir. 2014) (invalidating confidentiality clause encompassing "personnel information," which the Board read to cover wage information).

In the Confidentiality Agreement challenged here, Banner described "confidential information" as encompassing "[p]rivate employee information," including "salaries" and "disciplinary action." J.A. 86. Even if a reasonable employee would not have thought such quintessential Section 7 information was covered by the term "confidential information" standing alone, *Cmty. Hosps.*, 335 F.3d at 1089, Banner's Agreement expressly reached information about salaries and employee discipline. A reasonable employee could well understand Banner's rule to prohibit the very discussion of terms and conditions of employment that Section 7 protects. That is the sort of overbreadth our precedents squarely forbid. *See, e.g.*, *Cintas*, 482 F.3d at 465 (invalidating policy barring employees from discussing "any information concerning the company"); *Hyundai*, 805 F.3d at 314-15 (invalidating policy preventing employees from "disclos[ing] information or messages" exchanged on the company's internal network except to "authorized persons").

Banner's Confidentiality Agreement is not salvaged by its safe harbor allowing employees to discuss information about salaries and discipline when "shared by the employee" whom the information concerned. The Board has recognized that restricting employees' "use of information innocently obtained" interferes with Section 7 rights. *Labinal, Inc.*, 340 NLRB 203, 210 (2003). The Confidentiality Agreement's permission to discuss information "shared by the employee" is

ambiguous—and hence inadequate to protect employees' right to share innocently obtained information—on at least two fronts.

First, it is not clear with whom the information must be "shared" in order to be fair game for employee discussion. For an employee to discuss her co-worker's unfair working conditions, would she need to have heard the information directly from the co-worker, or would it suffice that she heard the information secondhand? And would she need the co-worker merely to divulge the information voluntarily, or also to authorize further dissemination?

Second, it is not clear how Banner's rule would apply to situations where information leaked inadvertently, such as where an employee left a paystub on a widely accessible office photocopier. *See, e.g.*, *Labinal*, 340 NLRB at 209-10 (holding that employee innocently obtained wage information when co-worker sitting beside her opened a paystub in her line of vision). The term "shared" in Banner's Agreement does not plainly allow discussion of information innocently obtained but not actively shared; we would not ordinarily say that an employee "shared" her paystub by leaving it on the copier or opening it in view of coworkers. In sum, permission to use information only insofar as it has been "shared" may require consent to the specific use, yet the Board has held that "[t]o prohibit one employee from discussing another employee's pay without the knowledge and permission of the other employee muzzles employees who seek to engage in concerted activity for mutual aid or protection." *Id.* at 210. Because a reasonable employee could interpret Banner's Confidentiality Agreement as prohibiting discussion of the working conditions of any employee who has not expressly authorized the particular discussion, the Board reasonably found a violation of Section 8.

The Board also reasonably determined that Banner failed to present "a legitimate and substantial business justification" for its Confidentiality Agreement outweighing the burden it imposes on employees. *Hyundai*, 805 F.3d at 314. The Agreement is not tailored to Banner's concededly substantial interest in protecting patient privacy, *see* Pet'r Br. 41, because it is not limited to "[p]atient information," but separately identifies "[p]rivate employee information … not shared by the employee" as "confidential information." J.A. 86. Neither is Banner's Confidentiality Agreement tailored to its asserted interest in respecting antidiscrimination and privacy laws, such as by forestalling potential retaliation against employees who press EEO complaints or complying with the Health Insurance Portability and Accountability Act of 1996. *See* Pet'r Br. 41. As written, the Agreement could chill discussion of quintessential Section 7 information—including salaries and discipline—even when such discussion would not conflict with other applicable laws.

The Board's remedial order requires Banner to post a remedial notice "at all facilities where [it] utilizes its confidentiality agreement." 362 NLRB No. 137, at *1 n.3. We defer to the Board on remedial matters unless its order is "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Petrochem Insulation, Inc. v. NLRB*, 240 F.3d 26, 34-35 (D.C. Cir. 2001) (quoting *Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943)). Banner objects that the Board lacked evidence that Banner used the Confidentiality Agreement beyond the hospital where Navarro worked. But the Agreement itself contains a "Banner Health" logo and refers to "Banner" and "BH"; nothing suggests that it applies only at Banner Estrella Medical Center. J.A. 86. It was within the Board's "broad discretionary power" over remedies to order Banner to post a

notice wherever it used the Agreement. *Petrochem*, 240 F.3d at 34.

**B. Investigative Nondisclosure Policy.** The Board also sanctioned Banner for maintaining a categorical nondisclosure rule regarding certain types of workplace investigations, but we deny enforcement of that part of the Board's Order because the record lacks substantial evidence that Banner had such a policy. As recounted above, the Board relied exclusively on the Interview of Complainant form and Odell's limited and equivocal testimony about how and when it was used. The form, under the header "Introduction for all interviews," set forth a scripted nondisclosure request. Odell testified, however, that she did not in practice request nondisclosure in "all" interviews, nor did she make any such request of Navarro. *See* Tr. at 194. Instead, Odell said she would request nondisclosure only when her investigation required her to speak to more than one person, *id.* at 258, and "[j]ust in the more sensitive situations," *id.* at 260. She identified sexual harassment, hostile work environment, and "[s]uspicion of abuse" cases as "particular types of investigations … where [she] may ask someone to keep things confidential." *Id.* at 259-60.

On that evidence, the Board found the Interview of Complainant form "prescribes a standard 'Introduction for all Interviews'" that "directs the investigator" to request nondisclosure. 362 NLRB No. 137, at *2. The Board interpreted Odell's testimony that she requested nondisclosure "[j]ust in the more sensitive situations," Tr. at 260, as establishing that she "request[ed] confidentiality in any investigation into alleged sexual harassment, hostile work environment claim, charge of abuse, or similar alleged misconduct." 362 NLRB No. 137, at *6. The Board further found no evidence that Odell "made any individualized

determinations that confidentiality was necessary to maintain the integrity of any particular investigation or any particular interview." *Id.* at *2. That categorical approach, the Board concluded, violated its precedents placing the burden on the employer to determine, on a "case-by-case" basis, that confidentiality is necessary "based on objectively reasonable grounds for believing that the integrity of the investigation will be compromised without confidentiality." *Id.* at *5 (citing *Hyundai Am. Shipping Agency, Inc.*, 357 NLRB 860, 874 (2011); *Phoenix Transit Sys.*, 337 NLRB 510 (2002); *Desert Palace, Inc.*, 336 NLRB 271 (2001)).

Even under our deferential standard of review, the Board made unwarranted logical leaps that the evidence cannot fairly support. Odell was never asked whether her approach was categorical in the types of investigations to which she referred, or whether she instead requested confidentiality only when she saw a case-specific need for it. In particular, Odell's testimony identifying sexual harassment and other types of cases where she "may ask someone to keep things confidential" did not suggest that she necessarily did so in all such cases. Tr. at 259-60. Nor does her statement that she requested nondisclosure "[j]ust in the more sensitive situations," *id.* at 260, mean she did so without reference to the individual features of a sensitive investigation. As Banner points out, "a few specific questions" could have established whether Odell routinely requested confidentiality "whenever she conducted certain types of investigations." Pet'r Reply Br. 1.

The Board is surely entitled to draw "reasonable inferences" from the evidence, *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 124-25 (D.C. Cir. 2001), but here Odell was simply never asked key questions to establish whether, in practice, Banner had a policy of categorically requesting nondisclosure regarding any particular kind of investigation. Banner's

counsel acknowledged at oral argument that the nondisclosure script, standing alone, could well chill workers' protected communications about the terms and conditions of employment—but only if they were aware of its contents. *See* Oral Arg. at 12:27-12:58. As it stands, the record is devoid of evidence that any employee was aware of the form or the content of its nondisclosure script. Odell's testimony suggested that, despite the header, Banner's policy was not to request nondisclosure in "all investigations." But her testimony was simply too terse and unclear to sustain the Board's determination that Banner had a policy of categorically requesting nondisclosure of the entire subset of investigations that addressed "alleged sexual harassment, hostile work environment claim, charge of abuse, or similar alleged misconduct." 362 NLRB No. 137, at *6.

Because the lack of substantial evidence dooms this part of the Board's Order, we need not address Banner's (or *amici*'s) arguments that the Board failed to balance employees' Section 7 rights against employers' interests in nondisclosure of workplace investigations. Nor need we opine on the Board's requirement of a case-by-case approach to justifying investigative confidentiality. *Cf. Hyundai*, 805 F.3d at 314 (declining to endorse the Board's "novel view" but holding that Hyundai's rule prohibiting discussion of all matters under investigation "was so broad and undifferentiated that the Board reasonably concluded that Hyundai did not present a legitimate business justification for it"). Finally, Banner's argument that the Board violated due process by finding a violation on a theory not litigated before the ALJ is not properly before us, as Banner failed to raise it before the Board. *See Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n.3 (1975). Banner also failed to raise, and thus forfeited, any argument that the violations the Board found were insufficiently related to those alleged in Navarro's charge. *See*

15

*Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 417-19 (D.C. Cir. 1996); *Cmty. Hosps*, 335 F.3d at 1088.

\* \* \*

Banner's petition for review is granted as to the investigative nondisclosure policy. The Board's cross-application for enforcement is granted as to the Confidentiality Agreement. The case is remanded to the Board for further proceedings consistent with this opinion.

*So ordered.*