# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 16-60284

—————

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2017

Lyle W. Cayce
Clerk

T-MOBILE USA, INCORPORATED,

      Petitioner - Cross Respondent

v.

NATIONAL LABOR RELATIONS BOARD,

      Respondent - Cross Petitioner

Consolidated with 16-60497

NATIONAL LABOR RELATIONS BOARD,

      Petitioner

v.

METROPCS COMMUNICATIONS, INCORPORATED,

      Respondent

—————————

On Petitions for Review and Cross-Application for Enforcement of
an Order of the National Labor Relations Board

—————————

No. 16-60284

Cons. w/ No. 16-60497

Before KING, JOLLY, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, the National Labor Relations Board ("NLRB" or "Board") challenges certain T-Mobile[1] workplace rules, which it contends prohibit employees from exercising unionizing rights.

T-Mobile's employee handbook (1) encouraged employees to "maintain a positive work environment"; (2) prohibited "[a]rguing or fighting," "failing to treat others with respect," and "failing to demonstrate appropriate teamwork"; (3) prohibited all photography and audio or video recording in the workplace; and (4) prohibited access to electronic information by non-approved individuals. The Board determined that all four provisions violated the National Labor Relations Act because each of them discouraged unionizing or other concerted activity protected by the Act. T-Mobile resists and seeks review of the Board's order.

We hold that the Board erred in finding that a reasonable employee would construe policies (1), (2), and (4) to prohibit protected activity. However, we will not upset the Board's finding that a reasonable employee would construe policy (3) to prohibit protected activity. Accordingly, we grant in part and deny in part enforcement of the Board's order.

I.

T-Mobile and MetroPCS are telecommunications companies that market cell phones and related services, with offices and retail locations located throughout the United States. In 2014, based on charges filed by the

---

[1] We refer to petitioner T-Mobile USA, Inc., and cross-respondent MetroPCS Communications, Inc., collectively as "T-Mobile." T-Mobile and MetroPCS are affiliated companies; T-Mobile acquired MetroPCS in 2013.

No. 16-60284

Cons. w/ No. 16-60497

Communication Workers of America,[2] the NLRB brought a complaint against T-Mobile alleging that several of the provisions of T-Mobile's employee handbook violated the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* This appeal concerns four provisions of the handbook that the NLRB determined were forbidden under the NLRA.[3]

A.

The "workplace conduct" policy is found under the "Standards of Conduct" heading in the employee handbook. The policy provides:

> [T-Mobile] expects all employees to behave in a professional manner that promotes efficiency, productivity, and cooperation. Employees are expected to maintain a positive work environment by communicating in a manner that is conducive to effective working relationships with internal and external customers, clients, co-workers, and management.[4]

---

[2] The Communications Workers of America is an intervenor in this case and has filed a separate brief in support of the NLRB's position.

[3] The NLRB originally alleged that eleven other provisions of the employee handbook also violated the NLRA. T-Mobile did not contest the administrative law judge's ("ALJ's") finding that these eleven provisions violated the NLRA, and does not challenge on appeal the Board's summary affirmance of the ALJ's findings regarding those provisions. Rather, T-Mobile maintains that it chose to focus its appeal efforts on only what it considers the most "egregious" errors by the NLRB. Accordingly, the Board is granted summary enforcement of the order as it pertains to those eleven provisions. *See Sara Lee Bakery Grp., Inc. v. NLRB*, 514 F.3d 422, 429 (5th Cir. 2008) ("[W]hen an employer does not challenge a finding of the Board, the unchallenged issue is waived on appeal, entitling the Board to summary enforcement.").

[4] Although the entire policy was struck, the General Counsel never alleged that the first sentence of the policy violated the Act; he only alleged that the second sentence was improper.

3

No. 16-60284

Cons. w/ No. 16-60497

The "commitment-to-integrity" policy[5] is found under the "Conducting Business" heading in the code of business conduct. The policy begins with the preface:

> At T-Mobile, we expect all employees, officers and directors to exercise integrity, common sense, good judgment, and to act in a professional manner. We do not tolerate inconsistent conduct. While we cannot anticipate every situation that might arise or list all possible violations, the acts listed below are unacceptable.

The commitment-to-integrity policy then lists seventeen non-inclusive examples of "unacceptable" acts, including, in relevant part:

> Arguing or fighting with co-workers, subordinates or supervisors; failing to treat others with respect; or failing to demonstrate appropriate teamwork.[6]

The "recording" policy is found under the "Workplace Expectations" heading of the employee handbook. The policy provides:

> To prevent harassment, maintain individual privacy, encourage open communication, and protect confidential information employees are prohibited from recording people or confidential information using cameras, camera phones/devices, or recording devices (audio or video) in the workplace. Apart from customer calls that are recorded for quality purposes, employees may not tape or otherwise make sound recordings of work-related or workplace discussions. Exceptions may be granted when participating in an authorized [T-Mobile] activity or with permission from an employee's Manager, HR Business Partner, or the Legal Department. If an exception is granted, employees may

---

[5] The parties use the term "commitment to integrity policy" as shorthand for this policy.

[6] Other listed examples include destroying company property, dishonesty, criminal conduct, inappropriate dress, and sleeping on the job. One of the other examples, "[m]aking slanderous or detrimental comments about the Company," was found to be improper by the ALJ; T-Mobile has not contested that finding.

4

No. 16-60284

Cons. w/ No. 16-60497

not take a picture, audiotape, or videotape others in the workplace without the prior notification of all participants.

Finally, the "acceptable use" policy is found under the "Security" heading of T-Mobile's "Acceptable Use Policy for Information and Communication Resources." The policy provides:

> Users may not permit non-approved individuals access to information or information resources, or any information transmitted by, received from, printed from, or stored in these resources, without prior written approval from an authorized T-Mobile representative.[7]

## B.

The ALJ and the Board differed in their respective conclusions. The ALJ, ruling on a stipulated record, found that both the commitment-to-integrity policy and the acceptable use policy violated the NLRA, but that the workplace conduct policy and the recording policy did not. T-Mobile appealed, and the General Counsel cross-appealed, to the Board. A three-member panel of the Board held that the ALJ correctly found that the commitment-to-integrity policy and the acceptable use policy violated the NLRA, but that the ALJ had erred in finding that the other two policies did not. The Board thus held that all four of the challenged policies violated the NLRA and issued an order to that effect.

T-Mobile timely petitioned this Court for review of the NLRB's decision. The Board has filed a cross-application for enforcement of its order. *See* 29 U.S.C. §§ 160(e), (f).

---

[7] The "Security" section otherwise provides that employees must help keep T-Mobile information resources secure; that employees must secure resources and not disclose their passwords; that employees are required to use passwords, etc. The ALJ found that other parts of the "Acceptable Use Policy," including parts limiting use of information resources to "legitimate business purposes," to be invalid; T-Mobile has not contested that finding.

No. 16-60284
Cons. w/ No. 16-60497

II.

A.

Section 7 of the NLRA provides a declaration of statutory policy: "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) of the Act in turn provides enforcement of that policy by stating that it shall be an "unfair labor practice" to "interfere with, restrain, or coerce employees in the exercise of the rights" protected by Section 7. 29 U.S.C. § 158(a)(1). Here, the "appropriate inquiry" is whether T-Mobile's rules for workplace conduct violate § 8(a)(1) by chilling a reasonable employee in the exercise of his or her Section 7 rights. *See Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 209 (5th Cir. 2014). Indeed, our precedent has previously noted that "[w]here the rules are likely to have a chilling effect, the Board may conclude that their maintenance is an unfair labor practice, even absent evidence of enforcement." *Id.* (quoting *Lafayette Park Hotel*, 326 NLRB 824, 825 (1998)) (ellipses omitted).

In order to determine whether a workplace rule violates Section 8(a)(1), this Court applies the two-part *Lutheran Heritage* framework. First, the Court decides "whether the rule *explicitly* restricts activities protected by Section 7." *Flex Frac*, 746 F.3d at 208-09 (quoting *Lutheran Heritage Village-Livonia*, 343 NLRB 646, 646 (2004)); *see also NLRB v. Arkema, Inc.*, 710 F.3d 308, 318 (5th Cir. 2013). Second, even if the restriction is not explicit, the rule may still violate Section 8(a)(1) where "(1) employees would reasonably construe the language to prohibit Section 7 activity; (2) the rule was promulgated in

No. 16-60284

Cons. w/ No. 16-60497

response to union activity; or (3) the rule has been applied to restrict the exercise of Section 7 rights." *Id.* at 209 (quoting *Lutheran Heritage*, 343 NLRB at 647).[8] When construing a work rule, the Board must "give the rule a reasonable reading." *Lutheran Heritage*, 343 NLRB at 646. Additionally, the Board "must refrain from reading particular phrases in isolation" and "must not presume improper interference with employee rights." *Id.* The appropriate, objective inquiry is not whether the rules "*could* conceivably be read to cover Section 7 activity, even though that reading is unreasonable," but rather whether "a reasonable employee reading the[] rules *would* . . . construe them to prohibit conduct protected by the Act." *Id.* at 647 (emphasis added).

The "reasonable employee," although not specifically defined in *Lutheran Heritage* or subsequent jurisprudence, refers to a hypothetical, objective standard analogous to the "reasonable person" in tort law. *Cf.* Restatement (Second) of Torts § 283 (1965) ("[T]he standard of conduct to which [an actor] must conform to avoid being negligent is that of a reasonable man under like circumstances."). In this case, where the record does not suggest that the rules have been applied in the context of union or collective activity, the "reasonable employee" is a T-Mobile employee aware of his legal rights but who also interprets work rules as they apply to the everydayness of his job. The reasonable employee does not view every employer policy through the prism of the NLRA. Indeed, "[the Board] must not presume improper interference with employee rights." *Lutheran Heritage*, 343 NLRB at 646. The question is

---

[8] Here, there is no contention that the rule explicitly restricts protected activity, or that the rule was promulgated in response to union activity, or that the rule has been applied to restrict the exercise of protected activity; the NLRB only alleges generally that employees would reasonably construe the language to prohibit protected activity.

No. 16-60284
Cons. w/ No. 16-60497

whether a reasonable T-Mobile employee "would *reasonably construe* the language to prohibit Section 7 activity." *Lutheran Heritage*, 343 NLRB at 647 (emphasis added).

B.

The Board's findings of fact are conclusive if supported by substantial evidence. 29 U.S.C. §§ 160(e)-(f); *Flex Frac*, 746 F.3d at 207. Courts also defer to the Board's interpretation of the NLRA "so long as it is rational and consistent with the Act." *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 349 (5th Cir. 2013) (citations and quotations omitted). "Our deference extends to our review of both the Board's findings of fact and its application of the law. It does not, however, extend to the Board's legal conclusions . . . which we review *de novo*." *J. Vallery Elec., Inc. v. NLRB*, 337 F.3d 446, 450 (5th Cir. 2003).[9] Still, "[a]lthough we accord Board findings a measure of deference, our review is more than a mere rubber stamp of the decision." *Arkema*, 710 F.3d at 314 (citations and quotations omitted).

III.

The NLRB found that each of the four policies at issue—the workplace conduct policy, the commitment-to-integrity policy, the recording policy, and

---

[9] It is unclear whether the Board's findings in this case are entitled to deference. The Board did not engage in any factfinding or interpretation of the provisions of the NLRA; it only made legal determinations based on a stipulated record as to whether the hypothetical "reasonable employee" would be discouraged from protected activity based on the text of the policies at issue. *See NLRB v. Yeshiva Univ.*, 444 U.S. 672, 691 (1980) (refusing to defer to Board order decided "on the basis of conclusory rationales rather than examination of the facts of each case"); *cf. Dresser-Rand Co. v. NLRB*, 838 F.3d 512, 519 (5th Cir. 2016) (noting that Board conclusion that worker misconduct was objectively "serious enough" to deny reinstatement is a legal conclusion entitled to *de novo* review (citations and quotations omitted)). Because both parties appear to assume that the NLRB's findings are entitled to a degree of deference, we will assume, without deciding, that they are.

No. 16-60284
Cons. w/ No. 16-60497

the acceptable use policy—violated the Act because "employees would reasonably construe the language to prohibit Section 7 activity." *Lutheran Heritage*, 343 NLRB at 647. We address each policy in turn.

A.

We first address the workplace conduct policy.[10] The Board found that the workplace conduct policy, which encouraged employees to maintain a "positive work environment," violated the NLRA because a reasonable employee would read the language to discourage protected activity, including candid, potentially contentious discussions of unionizing. This finding is unreasonable.[11]

To a "reasonable employee," context matters in the interpretation of these rules. The policy is titled "*Workplace* Conduct." The rule refers to a positive *work environment* and effective *working relationships*, and requires employees to behave in a way that "promotes efficiency, productivity, and cooperation," with the obvious implication "with respect to work." In the context of the workplace presented in the record, this rule addresses a normal workplace, on a normal workday.

A reasonable employee of T-Mobile would interpret the policy as requiring professional manners, positive work environment, effective and

---

[10] As earlier noted, the policy provided, in full:

[T-Mobile] expects all employees to behave in a professional manner that promotes efficiency, productivity, and cooperation. Employees are expected to maintain a positive work environment by communicating in a manner that is conducive to effective working relationships with internal and external customers, clients, co-workers, and management.

[11] Indeed, *The Late Show* host Stephen Colbert mocked the Board's decision in this case, joking that "the government says I can't legally ask [my employees] to be happy." *See* https://www.youtube.com/watch?v=O2LNUOelJx4&feature=youtu.be&t=5m26s.

9

No. 16-60284
Cons. w/ No. 16-60497

courteous communications, getting along with everybody, common sense, and people skills. The reasonable T-Mobile employee would understand the rule to express a universally accepted guide for conduct in a responsible workplace. Indeed, the Board itself admonishes that these rules must be given a "reasonable reading." *Lutheran Heritage*, 343 NLRB at 646; *see also id.* ("[We] must not presume improper interference with employee rights."). In other words, the NLRB erred by interpreting the rule as to how the reasonable employee *could*, rather than *would*, interpret these policies—an analysis eschewed by the Board's own precedent. *See Lutheran Heritage*, 646 NLRB at 647.

This reading of these workplace rules is consistent with the only other circuit to have spoken on the matter. The DC Circuit in *Adtranz ABB Daimler-Benz Transportation, N.A., Inc. v. NLRB*, 253 F.3d 19 (D.C. Cir. 2001), addressed a policy similar to the ones at issue. There, asserting expected conduct from employees such as "[t]rust and respect for self and others," "[t]eamwork and cooperation," and "[e]ffective communication," the company prohibited "abusive or threatening language to anyone on company premises." *Id.* at 25. The NLRB had declared this rule in violation of the NLRA on the grounds that it prohibited an employee from engaging in heated labor discussions. *Id.* at 25-26. The DC Circuit did not buy in: "This position is not 'reasonably defensible.' It is not even close." *Id.* at 26. The court further rejected the NLRB's argument that the company's "effort to maintain a civil and decent workplace is an unfair labor practice that threatens the statutory rights of [its] employees under the NLRA." *Id.* at 25. The DC Circuit was in no mood for temporizing, saying that "it is preposterous that employees are

10

No. 16-60284

Cons. w/ No. 16-60497

incapable of organizing a union or exercising their other statutory rights under the NLRA without resort to abusive or threatening language." *Id.* at 25-26.

Still further, in *Community Hospitals of Central California v. NLRB*, 335 F.3d 1079, 1087-88 (D.C. Cir. 2003), the DC Circuit continued to reject the Board's displacement of facially-neutral work rules. The court held that a rule prohibiting "insubordination . . . or other disrespectful conduct," "read in context," "applies to incivility and outright insubordination, in whatever context it occurs." *Id.* at 1088. Furthermore, it held, such a rule would not restrict protected activity, including "vigorous proselytizing for or against a union." *Id.*[12]

In sum, we conclude that a reasonable employee would not construe a requirement to "maintain a positive work environment by communicating in a manner that is conducive to effective working relationships" to restrict Section 7 activity. We therefore deny enforcement of the Board's order as to the workplace conduct policy.

---

[12] *Accord, e.g.*, *Care One at Madison Ave., LLC v. NLRB*, 832 F.3d 351, 363 (D.C. Cir. 2016) ("[U]rging employees to behave with 'dignity and respect' would not be unlawful *on its own*, but for the unlawful implication [from other context]." (emphasis added)); *see also Palms Hotel & Casino*, 344 NLRB 1363, 1367-68 (2005) (approving of ban on "conduct which is or has the effect of being injurious, offensive, threatening, intimidating, coercing, or interfering" and noting that "reasonable employees would be []capable of grasping the expectation that they comport themselves with general notions of civility and decorum in the workplace"); *Lutheran Heritage*, 343 NLRB at 648-49 (upholding rule banning "harassment" and noting that "both employees and employers have a substantial interest in promoting a workplace that is 'civil and decent'"); *Care One*, 832 F.3d at 363 ("We have made clear that employers have the prerogative of demanding employees comply with generally accepted notions of civility [without running afoul of the NLRA]." (citations and quotations omitted)).

No. 16-60284
Cons. w/ No. 16-60497

B.

The Board[13] also found that the commitment-to-integrity policy[14] violated the NLRA because the policy would inhibit robust discussion of labor issues. The rule, like the workplace conduct rule, is on its face, only a common sense civility guideline. *See Lutheran Heritage*, 646 NLRB at 646-47; *Adtranz*, 253 F.3d at 25-26; *Community Hospitals*, 335 F.3d at 1087-88.

The policy, which prohibits "arguing or fighting," "failing to treat others with respect," and "failing to demonstrate appropriate teamwork," is prefaced by the conventional, common-sense admonition that T-Mobile expects its employees to "to exercise integrity, common sense, good judgment, and to act in a professional manner." These acts appear in a long, non-inclusive list of prohibited activity, including theft, fraud, dishonesty, and sleeping on the job. These examples that define the parameters of the rule address misconduct. As the DC Circuit noted in addressing such a rule, "[a]lthough [reasonable] employees are perhaps unlikely to know the term *ejusdem generis*, they no doubt grasp as well as anyone the concept it encapsulates." *Community Hospitals,* 335 F.3d at 1088.

Here, a reasonable employee would understand the language of the commitment-to-integrity policy to refer to similar misconduct. Furthermore, a

---

[13] The Board adopted the opinion of the ALJ as to the commitment-to-integrity policy.

[14] The policy provided, in full:

At T-Mobile, we expect all employees, officers and directors to exercise integrity, common sense, good judgment, and to act in a professional manner. We do not tolerate inconsistent conduct. While we cannot anticipate every situation that might arise or list all possible violations, the acts listed below are unacceptable . . .

Arguing or fighting with co-workers, subordinates or supervisors; failing to treat others with respect; or failing to demonstrate appropriate teamwork.

12

No. 16-60284
Cons. w/ No. 16-60497

reasonable employee would be fully capable of engaging in debate over union activity or working conditions, even vigorous or heated debate, without inappropriately "arguing or fighting," "failing to treat others with respect," or "failing to demonstrate appropriate teamwork." As the Board delineated in *Lutheran Heritage*, we view the rule from the perspective of the reasonable employee, not from the point of view of the exceptions to reasonableness. *See* 646 NLRB at 646-47.

Accordingly, we decline to enforce the Board's order as to the commitment-to-integrity policy.

C.

The Board next found that T-Mobile's recording policy[15] violates the NLRA because it would discourage workers from engaging in protected activity.

We are primarily concerned with the broad reach of the recording ban. The ban, by its plain language, encompasses any and all photography or recording on corporate premises at any time without permission from a supervisor. This ban is, by its own terms alone, stated so broadly that a reasonable employee, generally aware of employee rights, would interpret it to

---

[15] The policy provided, in full:

To prevent harassment, maintain individual privacy, encourage open communication, and protect confidential information employees are prohibited from recording people or confidential information using cameras, camera phones/devices, or recording devices (audio or video) in the workplace. Apart from customer calls that are recorded for quality purposes, employees may not tape or otherwise make sound recordings of work-related or workplace discussions. Exceptions may be granted when participating in an authorized [T-Mobile] activity or with permission from an employee's Manager, HR Business Partner, or the Legal Department. If an exception is granted, employees may not take a picture, audiotape, or videotape others in the workplace without the prior notification of all participants.

No. 16-60284

Cons. w/ No. 16-60497

discourage protected concerted activity, such as even an off-duty employee photographing a wage schedule posted on a corporate bulletin board. *Cf. Flex Frac*, 746 F.3d at 208 ("A workplace rule that forbids the discussion of confidential wage information between employees patently violates section 8(a)(1)." (citations, quotations, alterations, and ellipses omitted)); *accord Whole Foods Mkt. Grp., Inc. v. NLRB*, No. 16-0002-AG, --- F. App'x ---, 2017 WL 2374843, at *2 (2d Cir. June 1, 2017) (holding that where "no-recording policies prohibited all recording without management approval, employees would reasonably construe the language to prohibit recording protected by Section 7" (citations and quotations omitted)).

T-Mobile argues that the ban's stated purposes—"[t]o prevent harassment, maintain individual privacy, encourage open communication, and protect confidential information"—are legitimate business interests that ordinarily would justify the ban. But merely reciting such justifications does not alter the fact that the operative language of the rule on its face prohibits protected Section 7 activity, including Section 7 activity wholly unrelated to those stated interests.

Unlike the "workplace conduct" policy and the "commitment-to-integrity" policy, the recording policy forbids certain forms of clearly protected activity. We have earlier held that held those two policies would not be interpreted by a reasonable T-Mobile employee as forbidding protected activity. By contrast, a reasonable T-Mobile employee, aware of his legal

14

No. 16-60284
Cons. w/ No. 16-60497

rights, would read the language of the recording policy as plainly forbidding a means of engaging in protected activity.[16]

Because a reasonable employee would construe the recording policy to prohibit forms of protected activity, we hold that the Board's determination that the recording policy violated the NLRA is supported by a reasonable interpretation of the record. Its order will be enforced in that respect.

D.

Finally, the Board[17] found that the acceptable use policy[18] violated the NLRA because a reasonable employee would construe it to prohibit protected activity such as accessing and sharing wage and benefit information contained in his or her e-mail.

---

[16] The parties dispute whether a right to photograph and record the workplace exists under the NLRA in certain circumstances. *Compare, e.g.*, *Whole Foods Mkt., Inc.*, 363 NLRB No. 87 at nn.7-8 (Dec. 24, 2015) ("[O]ur case law illustrates a wide array of protected uses for [electronic recording] devices."), *with Flagstaff Med. Ctr., Inc.*, 357 NLRB 659, 683 (2011) ("[T]he specific right to take photos in the workplace would not reasonably seem to come to mind as an inherent component of the more generalized fundamental rights of employees set forth in Section 7 of the Act."). We need not decide whether and to what extent such a right exists; we are satisfied that, as in the example provided above, there are circumstances in which taking photographs or recordings may be protected activity, and that T-Mobile has not provided any legitimate reason why its ban ought to be allowed to encompass such activity.

The Board filed a motion to strike a section of T-Mobile's reply brief, arguing that T-Mobile waived any argument that no NLRA right to photograph and record existed by failing to address the argument in its principal brief. Because we decline to address the argument, the Board's motion is DENIED as moot.

[17] The Board adopted the opinion of the ALJ.

[18] The policy provided, in full:

Users may not permit non-approved individuals access to information or information resources, or any information transmitted by, received from, printed from, or stored in these resources, without prior written approval from an authorized T-Mobile representative.

No. 16-60284
Cons. w/ No. 16-60497

The NLRB's decision, however, disregards the context in which the acceptable use policy is to be read and understood. The "Scope" section of the acceptable use policy explicitly states that the policy "applies to all non-public T-Mobile information."[19] Thus the policy only prohibits employees from sharing *non-public* information.

Where a company policy prohibits the disclosure of non-public information, courts presume that a reasonable employee would not construe the policy to prohibit the disclosure of information that may be properly used in protected activity, such as wage and benefit information, so long as the policy does not explicitly state that it encompasses such information. *See Lafayette Park Hotel*, 326 NLRB at 826 ("Although the term 'hotel-private' is not defined in the rule, employees in our view reasonably would understand that the rule is designed to protect that [proprietary business information] interest rather than to prohibit the discussion of their wages."); *accord K-Mart*, 330 NLRB 263, 263 (1999); *cf. Flex Frac*, 746 F.3d at 210 (finding non-disclosure policy violated NLRA where the policy specifically defined "Confidential Information" to include "personnel information," *i.e.*, wage and benefit information). Here, as in *Lafayette Park* and unlike in *Flex Frac*, the policy does not define "non-public T-Mobile information" in a way that would lead a reasonable worker to believe that it includes protected wage and benefit

---

[19] The limiting language states, in full, "This policy applies to all non-public T-Mobile information and any communication resource owned, leased, or operated by or for T-Mobile, and computers or devices, including those belonging to employees or contractors to the extent that these resources are used for T-Mobile business purposes. All information created in connection with T-Mobile business is the property of T-Mobile." In other words, the policy explicitly states that it applies only to non-public information and other resources pertaining to that non-public information.

16

information.[20]    Instead, the policy only applies to the sort of proprietary business information that an employer may properly restrict its employees from sharing outside of the company. *See Lafayette Park Hotel*, 326 NLRB at 826 ("[B]usinesses have a substantial and legitimate interest in maintaining the confidentiality of private information, including . . . trade secrets, contracts with suppliers, and a range of other proprietary information.").

Thus the NLRB's finding that a reasonable worker would construe the acceptable use policy to discourage protected activity is unreasonable, and we deny enforcement as to that part of its order.

## IV.

To sum up: We hold that the Board's findings regarding the workplace conduct policy, the commitment-to-integrity policy, and the acceptable use policy are unreasonable. The Board's order is denied enforcement as to those policies. However, the Board's findings regarding the recording policy is reasonable, and the Board's order is enforced as to that policy. The Board's order is also summarily enforced as to the eleven polices not challenged by T-Mobile on appeal.

Accordingly, T-Mobile's petition is GRANTED IN PART and DENIED IN PART and the NLRB's cross-application is correspondingly DENIED IN PART and GRANTED IN PART.[21]

---

[20] In an earlier version of a confidential information policy contained in a separate document, T-Mobile did suggest that non-public information includes protected wage and benefit information. The NLRB found that this provision violated the NLRA and struck it down, and T-Mobile did not contest this finding. Accordingly, with respect to the acceptable use policy now on appeal, we do not consider the now-invalidated definition of confidential information.

[21] The Board's motion to strike portions of T-Mobile's reply brief is DENIED as moot.