# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 15, 2021

Lyle W. Cayce
Clerk

No. 20-60472

Lowes Home Centers, L.L.C.,

*Petitioner Cross-Respondent*,

*versus*

National Labor Relations Board,

*Respondent Cross-Petitioner*.

Appeal from a Petition for Review of the
National Labor Relations Board

Before Davis, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:*

Lowe's Home Centers, L.L.C. ("Lowe's") challenges the denial of its Petition for Review of an Order of the National Labor Relations Board. Lowe's workplace policy prohibits disclosure of confidential information, and an employee challenged the policy under Section 8(a)(1) of the National

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60472

Labor Relations Act, which prevents employers from limiting employees' discussions of their wages. The administrative law judge ("ALJ") concluded that Lowe's policy violated the Act. Lowe's appealed to the National Labor Relations Board, and the Board affirmed. We AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

Employee Amber Frare filed an unfair labor practice claim against Lowe's. She alleged that a section of Lowe's employee code violated 29 U.S.C. § 1581(a)(1) by interfering with employees' right to discuss wages. The relevant part of the Lowe's policy reads as follows:

> Employees must maintain the confidentiality of information entrusted to them by Lowe's, its suppliers, its customers, or its competitors, except when disclosure is authorized by the Chief Compliance Officer or required by law. Employees must consult with the Chief Compliance Officer before disclosing any information that could be considered confidential.
>
> Confidential information includes, but is not limited to:
>
> · material non-public information; and
>
> · proprietary information relating to Lowe's business such as customer, budget, financial, credit, marketing, pricing, supply cost, personnel, medical records or *salary information*, and future plans and strategy.

The parties presented their arguments to an ALJ, and the only issue presented was whether this portion of Lowe's policy violated 29 U.S.C. § 1581(a)(1).

The ALJ determined that Lowe's code provision was "per se unlawful" under *The Boeing Co.*, 365 NLRB No. 154, 2017 WL 6403495 (Dec. 14, 2017). The ALJ did not consider the legitimate justifications for the policy and construed any ambiguities against Lowe's as the policy drafter.

No. 20-60472

Lowe's filed exceptions. The Board adopted the decision of the ALJ with minor changes. Lowe's now appeals.

## II. STANDARD OF REVIEW

We review the Board's legal conclusions de novo. *T-Mobile USA, Inc. v. NLRB*, 865 F.3d 265, 271 (5th Cir. 2017). The Board's factual findings are entitled to deference so long as they are "supported by substantial evidence on the record considered as a whole." *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 518 (5th Cir. 2007) (quoting *J. Vallery Elec., Inc. v. NLRB*, 337 F.3d 446, 450 (5th Cir.2003)).

## III. DISCUSSION

Lowe's appeals the Board's decision, arguing that the Board erred by using the "reasonably construe" standard from *Lutheran Heritage* and by failing to consider legitimate justifications for Lowe's policy. We disagree.

### 1. *"Reasonably construe" standard*

Lowe's argues that the Board erred by analyzing Lowe's policy under *Lutheran Heritage's* overruled "reasonably construe" test. We disagree.

In *Boeing*, the Board overruled much of *Lutheran Heritage*, 343 NLRB 646 (2004), including its "reasonably construe" standard for assessing the lawfulness of facially neutral employment rules. 2017 WL 6403495 at *8.

> "Under Lutheran Heritage, even when an employer's facially neutral employment policies, work rules and handbook provisions do not expressly restrict Section 7 activity, were not adopted in response to NLRA-protected activity, and have not been applied to restrict NLRA-protected activity, the Board will still determine that the maintenance of these requirements violates Section 8(a)(1) if employees "would reasonably construe the language to prohibit Section 7 activity."

No. 20-60472

*Id.* In *Boeing*, the Board overruled the "reasonably construe" standard for several reasons including its conflict with Supreme Court and NLRB precedent, both of which permit businesses to offer legitimate justifications for their facially neutral employment policies. *Id.* at *8–*13.

After overruling *Lutheran Heritage's* strict "reasonably construe" test, the Board adopted a more flexible standard.

> "[W]hen a facially neutral rule, reasonably interpreted, would not prohibit or interfere with the exercise of NLRA rights, maintenance of the rule is lawful without any need to evaluate or balance business justifications, and the Board's inquiry into maintenance of the rule comes to an end. Even under Lutheran Heritage--in which legality turned solely on a rule's potential impact on protected rights--a rule could lawfully be maintained whenever it would not 'reasonably' be construed to prohibit NLRA-protected activity, even though it 'could conceivably be read to cover Section 7 activity.' Conversely, when a rule, reasonably interpreted, would prohibit or interfere with the exercise of NLRA rights, the mere existence of some plausible business justification will not automatically render the rule lawful. Again, the Board must carefully evaluate the nature and extent of a rule's adverse impact on NLRA rights, in addition to potential justifications, and the rule's maintenance will violate Section 8(a)(1) if the Board determines that the justifications are outweighed by the adverse impact on rights protected by Section 7."

*Id.* at *17 (quoting *Lutheran Heritage*, 343 NLRB at 647).

In other words, when a facially neutral rule cannot reasonably be interpreted to violate the NLRA, the rule is lawful. There is no need to examine the employer's justifications for the rule. *Id.* When a facially neutral rule is reasonably interpreted to violate the NLRA, the rule's lawfulness is uncertain, and further analysis is required. *See id.* at *4. ("Under the standard

No. 20-60472

we adopt today, when evaluating a facially neutral policy, rule or handbook provision that, when reasonably interpreted, would potentially interfere with the exercise of NLRA rights, the Board will evaluate two things: (i) the nature and extent of the potential impact on NLRA rights, and (ii) legitimate justifications associated with the rule.").

Here, the Board concluded that Lowe's policy was facially neutral and could be reasonably construed to restrict employees' wage discussions. The policy prohibits employees from discussing confidential information which explicitly includes "salary information." We thus agree with the Board's conclusion that the policy can be reasonably construed to limit employees' rights under the NLRA. We now turn to Lowe's legitimate justifications for the policy.

*2. Lowe's Legitimate Justifications*

Lowe's argues that the Board erred by failing to consider its legitimate justifications for the policy. We disagree.

Under *Boeing*, the Board created three categories of rules. Category 1 rules are *per se* lawful, either because they cannot be reasonably interpreted to interfere with employees' rights or because the adverse impacts on rights is outweighed by justifications for the rule. *Id.* at *4. Category 2 rules warrant individualized scrutiny in each case, and the Board must weigh the adverse impacts on NLRA rights with employer's legitimate justifications. *Id.*

Category 3 rules are generally unlawful because they "would prohibit or limit NLRA-protected conduct, and the adverse impact on NLRA rights is not outweighed by justifications associated with the rule. An example of a Category 3 rule would be a rule that prohibits employees from discussing wages or benefits with one another." *Id.* at *4.

No. 20-60472

The Board reasonably construed Lowe's policy as limiting the exercise of NLRA rights and looked to Lowe's justifications. Lowe's argues that its policy was justified by its need to prevent employees from disseminating its confidential information. The Board recognized that employers have legitimate interests in maintaining confidential records but concluded that those "circumstances [were] not present in this case" because Lowe's policy was overly broad. The policy was not tailored to address only those employees with special access to confidential information. *See, e.g., Asheville School, Inc.*, 347 NLRB 877, 877 fn. 2 (2006) (finding lawful discharge of employee who disclosed wage and salary information contained in confidential records within her special custody).

We find no error in the Board's analysis. Lowe's policy falls within the Category 3 rules contemplated by *Boeing* because the policy can be reasonably construed to limit employees' wages and because Lowe's justification does not save the policy. The policy is too broad to be justified by Lowe's interest in preventing employees from sharing confidential information.

Lastly, Lowe's argues that the ALJ and the Board erred by construing the policy's ambiguities against it. While the ALJ may have relied on that principle from *Lutheran Heritage*, the Board did not.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the Board's decision.

6